**In re GUARDIANSHIP OF William Ace Kekaimana WINN, An Alleged Incapacitated Person.**

No. 05–10–01224–CV.

Court of Appeals of Texas, Dallas.

June 28, 2012.

Richard Kevin Spencer, Charles E. Waterbury, Zachary E. Johnson, Spencer & Waterbury, Dallas, TX, for Appellant.

Anthrea Nikolopoulos, The Ashmore Law Firm, PC, John D. Nation, Andrea Nation, Nation Law Firm, Dallas, TX, for Appellee.

Douglas A. Barnes, Attorney at Law, Dallas, TX, Attorney Ad Litem.

Before Justices MOSELEY, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

William Winn, Jr. (Father) challenges guardianship orders appointing Kimberly N. Winn (Mother) as a permanent guardian of their adult son, William Ace Kekaimana Winn (Ward). We affirm.

## BACKGROUND

Father and Mother were involved in contentious divorce litigation in Collin County when their son reached the age of eighteen in April 2009. Mother applied to the probate court at that time for appointment as their son's permanent guardian. In her verified application, Mother alleged Ward suffered from bipolar disorder and at times had the capacity to make "certain" decisions, but at other times he was "completely incapacitated." She also attached to her application a letter from Arnold W. Mech, M.D., the physician treating Ward for over a year, describing Ward's condition and treatment and opining that Ward "would benefit from a guardianship due to his intermittent incapacity." Mother sought appointment as guardian of Ward's person only and asked "that there be no limitation of the powers granted in the Court's Order of Appointment."

The constable's return of service shows Father was served with citation, Mother's application, and notice that he had until the Monday after the expiration of ten days from service to answer the application. Father did not file an answer or appear in the proceeding.

The trial court appointed an attorney ad litem for Ward, who filed an answer generally denying the allegations. A separate attorney for Ward filed an answer stating that Ward was "generally agreeable" to the appointment "subject to input by [Ward] as to the enumerated powers to be granted [Mother]."

A court-appointed investigator also filed a report stating he had met with Mother and Ward and had formed the opinion Ward had a good understanding of a guardianship and the role Mother would serve and that he felt the guardianship would be beneficial. The investigator stated in his report that he had spoken by telephone with Father and reported that Father did not feel Ward was incapacitated to the point of needing a guardian but felt Mother would be the most appropriate person if the fact finder determined otherwise. The probate court signed an order on July 7, 2009 appointing Mother as the Ward's permanent guardian.

Almost three months after the appointment, Father filed a statutory bill of review, motion to set aside the guardianship order, application to restore capacity, and alternative motion to modify guardianship. Father asserted Mother was attempting to use the guardianship to enhance her position in the divorce proceeding, and he attached copies of Mother's request to take judicial notice of adjudicative facts she had filed in the divorce proceeding following the probate court's appointment of Mother as Ward's permanent guardian.

The probate court conducted a hearing on Father's statutory bill of review and motions on March 30, 2010 and signed an order on May 7, 2010 denying Father's requests. The probate court did not make findings of fact or conclusions of law in response to Father's requests. Following a September 13, 2010 hearing on Father's motion for reconsideration or for new trial, which the court denied, the court signed an October 21, 2010 nunc pro tunc guardianship order submitted by Father's attorney, which deleted the word "total" from the court's findings of Ward's incapacity. Specifically, the trial court recited in the nunc pro tunc order that, after considering Father's "Motion to Modify Order," it had made a clerical error. The court made no other changes to the order.

## DISCUSSION

### Issues

Father raises eight issues in his appellate brief, contending (1) the probate court erred by ordering a guardianship "by submission (without a record)" in violation of section 644(a)(2) of the Texas Probate Code, (2) the probate court's order granted more relief than requested in the pleadings, (3) the probate court erred by hearing Father's request for restoration of capacity prior to hearing the statutory bill of review under probate code section 657, (4) the probate court altered the burden of proof by hearing the motion for restoration prior to the bill of review, (5) & (6) there was no evidence or insufficient evidence supporting the guardianship and finding of incapacity, (7) the evidence supported a restoration of capacity, and (8) the probate court's "nunc pro tunc" order removing "total" from its finding of incapacity was an impermissible substantive change to the guardianship order.

### Adult Guardianship

Section 677 of the probate code provides that the court "shall appoint a guardian for a person other than a minor according to the circumstances and considering the best interests of the ward." TEX. PROB.CODE ANN. § 677(a) (West 2003). Before appointing a guardian, the court "must find by clear and convincing evidence" (1) the proposed ward is an incapacitated person, (2) it is in the best interest of the ward to have the court appoint a guardian, and (3) the rights of the ward or the ward's property will be protected by the appointment of a guardian. Id. § 684(a). An "[i]ncapacitated person" is defined, in relevant part, as "an adult individual who, because of a physical or mental condition, is substantially unable to provide food, clothing, or shelter for himself or herself, to care for the individual's own physical health, or to manage the individual's own financial affairs." Id. § 601(14)(B) (West Supp.2011). The court must find by a preponderance of the evidence that the ward is totally without capacity as provided by the code, or "lacks the capacity to do some, but not all, of the tasks necessary to care for himself or herself or to manage the individual's property." Id. § 684(b)(4). The court may not grant an application to create a guardianship for such an adult proposed ward if applicant fails to prove incapacity by evidence of "recurring acts or occurrences within the preceding six-month period and not by isolated instances of negligence or bad judgment." Id. § 684(c).

### Statutory Bill of Review

Under section 657 of the probate code, any "person interested, including a ward," may file a bill of review to have the probate court correct error in any "decision, order, or judgment" rendered by the court. Id. § 657. The applicant is required to

allege and prove substantial errors[1] by the trial court. *McDonald v. Carroll*, 783 S.W.2d 286, 288 (Tex.App.-Dallas 1989, writ denied). Error on the face of the record is not required because petitioner may prove the error on the trial. *Id.*

### Issue One: "Submission" of Mother's Application

■ In his first issue, Father contends the probate court erred by ordering a guardianship "by submission (without a record)" in violation of section 644(a)(2) of the Texas Probate Code. Section 644(a)(2) provides that an application for appointment of a guardian may not be considered by submission. Tex. Prob.Code Ann. § 644(a)(2). The term "submission" is not defined in the statute.

As a preliminary matter, Father did not plead in his bill of review that the trial court's substantial error was the absence of a reporter's record; rather, he asserted the error was the finding of "total" incapacity and the appointment of a guardian. In Father's recitation of the "substantial errors" in the trial court's order, he in fact claimed there was no clear and convincing evidence of incapacity "because the evidence in the record alone prevents such a finding." Father included his argument in writing for the first time in his request for the probate court to reconsider its order denying the bill of review. Even then, Father couched his argument in terms of the lack of evidence supporting a finding of total incapacity.

For the first time on appeal, Father equates "submission" under section 644(a)(2) with the requirement of a reporter's record. Citing *Hamilton v. Jones*, 521 S.W.2d 350 (Tex.Civ.App.-Houston [1st Dist.] 1975, writ ref'd n.r.e.), Father states he proved substantial error "by, simply, showing no record was made of the guardianship in violation of statute that mandates same cannot be heard by submission; it is exactly the type of error the statutory bill of review is designed to correct." Yet *Hamilton* did not involve either a lack of a reporter's record or "submission" of a guardianship or other proceeding. The appeal involved a declaration of heirship and the sufficiency of the evidence to support the trial court's finding as to appellant's adoption by decedent. *Id.* at 352–53. Of note, the evidence there showed the bill-of-review petitioners received no notice of the heirship proceeding. *Id.* at 353. Conversely here, Father received proper notice of the guardianship proceedings and chose not to appear. Assuming, without deciding, Father's complaint to the trial court sufficiently preserved his first issue, we conclude it lacks merit based on a plain reading of the statute.

■ In construing a statute, our primary objective is to determine and give effect to legislative intent as expressed in the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We use the definitions prescribed by the legislature and consider any technical or particular meaning the words may have acquired. *Id.* (citing Tex. Gov't Code Ann. § 311.011(b) (West 2005)). Otherwise we construe the statute's words according to their plain and common meaning. Tex. Gov't Code Ann. § 311.011(a).

We begin with the language of section 644, which is titled "Hearing by Submission." The first reference, subsection 644(a), is the provision in issue:

---

1. Cases describing the substantial—error standard are based on section 31 of the Texas Probate Code, which applies to "probate proceedings" and is substantially identical to section 657, which applies to a "guardianship proceeding." *Compare* Tex. Prob.Code Ann. § 657, *with* Tex. Prob.Code Ann. § 31 (West 2003).

(a) A court may consider *by submission* a motion or application filed under [the guardianship] chapter unless the proceeding is:

(1) contested; or

(2) an application for the appointment of a guardian.

TEX. PROB.CODE ANN. § 644(a) (emphasis added). The next reference, subsection (b), provides the burden of proof at a hearing on a motion or application that is "being considered by the court on submission" is on the party seeking relief. *Id.* § 644(b). Subsection (c) provides further that the court may consider a person's failure to file a response to a matter "that may be considered on submission" as lack of opposition. *Id.* § 644(c). Most telling, the last subsection states: "The court, on its own motion, may order oral argument on a motion or application that may be considered by submission." *Id.* § 644(e). This last subsection (e) contrasts "oral argument" with "submission."

Construing submission to mean "without oral argument" is consistent with the plain meaning of the word. In ordinary usage, submission means "an act of submitting something (as for consideration or inspection)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 2277 (1981). That is what occurs when an issue is presented to a trial court for a decision without oral argument.

See, e.g., *Richland Oaks Apartments, L.P. v. Bolos Associated Cos.*, No. 05–98–00829–CV, 2000 WL 1048513, at *3 (Tex. App.-Dallas Jul. 31, 2000, no pet.) (not designated for publication) (counsel's letter to trial court waiving hearing on motion and allowing motion to be heard by "submission" estopped appellant from raising complaint of failure to conduct oral hearing); *Jackson v. Reardon*, 14 S.W.3d 816, 818 (Tex.App.-Houston [1st Dist.] 2000, no pet.) (motion set for "hearing by submission without oral argument"); *cf. Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 359 (Tex.1998) (per curiam)("[T]he term 'hearing' does not necessarily contemplate either a personal appearance before the court or an oral presentation to the court.").

The legislature's requirement of a writing in other parts of the code also is important to our analysis—it knew how to require that testimony be reduced to writing, and it did not equate that requirement with "submission" as used in section 644. *See, e.g.,* TEX. PROB.CODE ANN. § 87 (West 2003) (under bold heading "Testimony to Be Committed to Writing," legislature provided "[a]ll testimony taken in open court upon the hearing of an application to probate a will shall be committed to writing at the time it is taken, and subscribed, and sworn to in open court by the witness or witnesses, and filed by the clerk").[2]

**2.** For the first time in his reply brief, Father cites probate code section 87 for the contention the probate court erred by not having a statement of facts of the guardianship proceedings. We decline to consider an issue never presented to the probate court and raised for the first time in a reply brief. *See City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex.1986) (per curiam) (noting appellate court should not have addressed issue raised for first time in reply brief on appeal). Even if we were to consider Father's argument as part of his first issue that "submission" means "with a reporter's record," we

observe section 87 applies by its express language to the probate of a will. Although Father argues section 87 applies to guardianship proceedings because of the catchall provision in section 603, he fails to address how a court would discern which specific hearings or matters covered by the probate code would require a statement of facts, and he cites no case law suggesting section 87 has ever been applied to a guardianship proceeding. *See* TEX PROB.CODE ANN. § 603(a) (stating to the extent "applicable and not inconsistent with other provisions of this code, the laws and rules governing estates of decedents apply to

Based on a plain reading of the statute and construing "submission" in section 644 pursuant to its common usage to mean "without oral argument," we overrule Father's first issue.

## Issue Two: Sufficiency of Pleadings

■ Father asserts in his second issue that the probate court's guardianship order exceeded the relief requested in Mother's pleadings. He complains specifically that the court "granted a *full* guardianship with a finding of *total* incapacity without sufficient pleadings to support such a request."

■ A trial court's judgment must conform to the pleadings. *See* Tex.R. Civ. P. 301. "A court's jurisdiction to render judgment is invoked by pleadings, and a judgment unsupported by pleadings is void." *Ex parte Fleming*, 532 S.W.2d 122, 123 (Tex.Civ.App.-Dallas 1975, no writ). Absent trial by consent, judgment on an unpleaded action is void. *See Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex.1979).

Mother pleaded in her application that Ward was "incapacitated" and requested that he "receive protection and assistance and that there be *no limitation of the powers granted* in the Court's Order of Appointment." (Emphasis added). She stated that because of Ward's condition, his demeanor "varies dramatically"; at certain times he has the capacity to make "certain" decisions and perform "certain" tasks, and at other times he is "completely incapacitated." We conclude this language is sufficient to support the probate court's order. Additionally, Father cannot be heard to complain now, in light of his own choices not to appear in the guardianship proceeding, that what was tried and covered by the guardianship order was not

within the probate court's jurisdiction. *See Stoner*, 578 S.W.2d at 682 (judgment on unpleaded action not void if tried by consent). Significantly, none of the parties to the proceeding have joined in Father's contentions. We overrule Father's second issue.

## Issues Three and Four: Order of Hearing

■ Father complains in his third and fourth issues that the probate court erred by hearing his request for restoration of capacity prior to hearing the statutory bill of review, which altered the burden of proof. The parties agree the hearing conducted by the probate court on March 30, 2010 included both matters. Although Father attaches a transcript from that hearing as an appendix to his appeal, the reporter's record was never filed despite this Court's notice to the parties. Father had the burden to furnish us with a record supporting his allegations of error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex.1990) (per curiam). An appellate court cannot consider a document cited in a brief and attached as an appendix if it is not formally included in the record on appeal. *Cantu v. Horany*, 195 S.W.3d 867, 870 (Tex.App.-Dallas 2006, no pet.). This Court's inability to consider Father's copy of the reporter's record, however, does not affect our analysis of issues three and four.

First, Father does not claim he was prevented from presenting anything to the probate court. At oral argument, counsel agreed he was not restricted in that presentation. Father claims he should have been allowed to proceed first with his bill of review. To the extent, if any, Father complained in his bill of review there was

and govern guardianships"). Besides Father's failure to raise applicability of section 87 prior to his reply brief, Father's choice not to attend the guardianship proceeding or otherwise appear prior to filing his bill of review precludes our consideration of the argument.

not a reporter's record of the guardianship proceeding, we have resolved issue one against him. The error Father "sought to be corrected" in his bill of review was "the finding of total incapacity and the appointment of a guardian of the person of [Ward]." He based that error on what he described as the lack of "clear and convincing evidence of incapacity because the evidence in the record alone prevents such a finding." Specifically, Father asserted neither Mother nor Mech suggested Ward was totally incapacitated. Father based his application to restore capacity on the same error; he argued Ward's "capacity be totally and completely restored because he was never totally incapacitated" and Ward's condition did not warrant a complete and total guardian. As described below in our analyses of issues five, six, and eight, Father has failed to show substantial error in the probate court's findings as to Ward's capacity to care for himself or substantive error in the court's nunc pro tunc order removing the word "total" from its original order. We overrule Father's third and fourth issues.

### Issues Five and Six: Sufficiency of the Evidence for Guardianship

█ In his fifth and sixth issues, Father asserts the guardianship is not supported by evidence, again arguing the matter was heard by submission and "there is no evidence of all of the findings required by [section 684]." Father also represents that counsel for Ward "concedes" there was no evidence presented.

Father cites no standard of review and no authorities—he references only the probate code provisions relating to guardianship proceedings. *See* Tex.R.App. P. 38.1(i) (appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and record). Although he cites no-

evidence and insufficient-evidence standards of review in the beginning of his brief, he does not apply those standards under issues five and six; instead, he argues the probate court abused its discretion by not requiring a record. Even if we consider the transcript of the March 30 hearing attached only as an appendix and which Father references, that transcript does not support his representation as to counsel's "concession." Ward's counsel suggested Mech's letter was not evidence, but elaborated that, without a record, the law presumes the judgment is supported by the evidence.

Father, as the party complaining about the sufficiency of the evidence to support the probate court's finding on Ward's incapacity, had the burden of presenting a sufficient record to show error. *See Christiansen,* 782 S.W.2d at 843. Without a reporter's record of the July 7, 2009 guardianship proceeding, we must presume the evidence supports the probate court's finding. *See Sandoval v. Comm'n for Lawyer Discipline,* 25 S.W.3d 720, 722 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (presuming omitted portions of record supported judgment). Under the presumption of regularity of judgments, we also presume the recitations in the guardianship order are correct absent any evidence to the contrary. *See In the Interest of D.A.,* 307 S.W.3d 556, 563 (Tex. App.-Dallas 2010, no pet.) (presuming correctness of recitation in judgment that parties had agreed not to limit child's residency); *see also In re Estate of Jones,* No. 05–10–00566–CV, 2011 WL 797378, at *1 (Tex.App.-Dallas Mar. 8, 2011, no pet.) (mem. op.) (upholding presumption of regularity of judgments as to temporary injunction recitation).

█ The probate court recited that, "after hearing and considering the Application and evidence submitted," it found

Ward was incapacitated, unable to care for himself, and he would be protected by the appointment of a guardian of his person. The court also stated Mother was a proper person to act as guardian. This is not a situation where Father claims he did not have the opportunity to appear and request a record. He admits he chose not to attend or appear. The case summary from the probate court shows a probate hearing "prove up" on July 7, 2009, the day the court signed the guardianship order.

The probate court's record also contains the court investigator's report of his conversations with Father and the undisputed report that, although not believing a guardian was necessary, Father agreed Mother was the appropriate guardian. The investigator concluded that Ward's circumstances "appear to be correctly alleged in the application," and it was his "opinion [Ward] desires for [Mother] to be named as his guardian."

Mother's application included Mech's current report, as Ward's treating doctor since February 2008, stating (1) Ward's incapacity was intermittent and severe when he was incapacitated, (2) Ward was unable to make responsible decisions for treatment, (3) four medications Ward was taking, (4) Ward was unable to operate a motor vehicle when incapacitated and it

was impossible to predict when that would occur, and (5) at the times Ward was incapacitated, he was unable to make decisions concerning operating a motor vehicle, exercising his right to vote, deciding whether to marry, spending money in excess of $20, seeking employment, handling bank or investment matters, applying for government assistance, employing persons to assist him, contracting for goods or services, and making decisions for medical care. Mech concluded Ward would benefit from a guardianship. The record also contains the Ward's answer, through counsel, stating he was "generally agreeable" to the guardianship.

Considering the presumptions we apply to the guardianship proceeding and the probate court's recitations in its order,[3] in addition to the information that is part of the record before this Court,[4] we overrule Father's issues five and six.

## Issue Seven: Father's Motion for Restoration of Capacity

■ Father states his seventh issue as "[a]lternatively, notwithstanding the procedural defects, Evidence Supported Capacity and Collin County Probate Court erred by Refusing to Restore Ward's Capacity." Father also cites no standard of review or authority in support of this issue. *See* TEX.R.APP. P. 38.1(i). He states that he

---

3. Father attaches an "Affidavit of Court Clerk" to his reply brief, which is an affidavit from the probate judge who signed the guardianship orders. That document is not before this Court for consideration. *Cantu,* 195 S.W.3d at 870 (appellate court cannot consider a document cited in a brief and attached as an appendix if it is not formally included in the record on appeal). In that document, the affiant confirms no statement of facts exists for the original guardianship proceeding. Affiant also states he "can verify that [the court] records show or strongly indicate that a hearing occurred in the Guardianship cause on July 7, 2009," and those records "further

indicate that the hearing pertained to then uncontested matters [and] that a record was waived."

4. By this statement, we are not suggesting that attaching a letter to an application constitutes admissible evidence. Rather, at the least, such information was before the probate court and could have been considered as part of the prove-up by agreement or other testimony. Absent a reporter's record on the facts presented in this case, we presume the evidence considered by the court supports its judgment. *See Sandoval,* 25 S.W.3d at 722.

"presented evidence of the Ward's capacity warranting restoration and termination of the guardianship" and references testimony by Ward, records from Mech, and the letter of "another doctor," J. Douglas Crowder. As described previously, we have no official record of the March 30 proceedings before us. Additionally, we have no exhibits from that proceeding, either official or unofficial. Even from the unofficial reporter's record attached as an appendix to Father's brief, it appears the letter from Crowder was not admitted, and Father does not complain on appeal about the probate court's exclusion of that letter as evidence.

Father filed his application for an order finding the Ward is no longer incapacitated pursuant to probate code section 694A(a)(1). *See* TEX. PROB.CODE ANN. § 694A(a)(1) (West Supp.2011). At the hearing on a section 694A application, the court "shall consider only evidence regarding the ward's mental or physical capacity at the time of the hearing that is relevant to the restoration of capacity." *Id.* § 694D(a) (West 2003). Father, as the party seeking to restore Ward's capacity, had the burden of proof at that hearing. *Id.* § 694D(b). Part of that burden required a "written letter or certificate from a physician licensed in [Texas] that is dated not earlier than the 120th day before the date of the filing of the application or dated after the date on which the application was filed but before the date of the hearing." *Id.* § 694F(a). Father attaches no letter to his application. And, even if we consider the reporter's record included in the appendix to his brief, the letter from Crowder that he attempted to introduce was excluded by the probate court.

From Father's issue, as stated—that there is "evidence" supporting the capacity of Ward—we do not know what evidentiary review, if any, he is attempting to in-voke. *See* TEX.R.APP. P. 38.1(i). Father did not meet his burden under section 694F of producing a physician's letter or certificate meeting the requirements of that section or otherwise meet his burden of proof to restore Ward's capacity, even if we accepted the parties' recitations from the reporter's record. We overrule issue seven.

## Issue Eight: Probate Court's Nunc Pro Tunc Order

In his eighth issue, Father contends the probate court's nunc pro tunc order removing "total" from the finding of Ward's incapacity was an impermissible substantive change to the guardianship order. He argues the court was granting his prior motion to modify and cites section 694H of the probate code regarding the express requirements to modify a guardianship. *See* TEX. PROB.CODE ANN. § 694H (West Supp.2011). Father also ties his argument to the alleged "fatal procedural defect, which was hearing the guardianship by submission."

A nunc pro tunc order is appropriate to correct clerical orders in a judgment. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex.1986). A court cannot, however, correct by nunc pro tunc order a judicial error made in rendering the judgment. *Id.* Whether an error is a judicial or clerical is a question of law. *Id.* at 232.

To decide whether the probate court's removal of the word "total" from its guardianship order was correction of a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. *Id.* at 231. A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered and does not arise from judicial reasoning or determination.

*SLT Dealer Grp., Ltd. v. AmeriCredit Fin. Servs., Inc.,* 336 S.W.3d 822, 832 (Tex. App.-Houston [1st Dist.] 2011, no pet.).

The parties do not dispute that the only change in the nunc pro tunc order was to delete the word "total." By removing that word, the probate court's nunc pro tunc order recited that the court had found by clear and convincing evidence that Ward was incapacitated, unable to care for himself, and required a guardian to protect his person. Both the powers granted to Mother as the guardian and the rights removed from the Ward remained the same and were consistent with Mech's report. The court also recited that the error being corrected—deletion of the word "total"—was clerical. We agree with the probate court's assessment. No judicial reasoning was required to remove that one word, and the judgment rendered by the court remained the same.

Father's argument that the probate court was granting his motion to modify is unpersuasive. The recitation in the order that Father's motion to modify was "partially" granted did not change the nature of what the trial court did by removing the word "total." Father sought in his motion to modify "at a minimum, to allow for [Ward] to drive, to vote, to decide to marry, to decide to make gifts, the ability to sign a Power of Attorney and all of such basic fundamental rights that all of us possess." The probate court made no changes in those rights under the guardianship order. Probate code section 694H requires the court to find that a guardian's powers or duties should be expanded or limited and prescribes the necessary findings of fact for a court to order a modification. *See* Tex. Prob.Code Ann. § 694H. Thus, section 694H is inapplicable to the probate court's ruling here. We conclude the nunc pro tunc order corrected a clerical error and therefore overrule Father's eighth issue.

## CONCLUSION

The prohibition against considering a guardianship application "by submission" as set forth in section 644(a)(2) of the Texas Probate Code, by its plain meaning, means "without oral argument"—not "without a reporter's record" as argued by Father. By failing to appear in the guardianship proceeding and request a record, Father cannot overcome the presumption of correctness in the probate court's order. Mother's application, in which she requested there be no limitation of the powers granted, was sufficiently broad to cover the powers granted by the court. And the court's nunc pro tunc order removing only the word "total" corrected what it described as a clerical error; the order did not change the rights removed or the powers granted. Father has failed to show error in denial of his application for restoration of Ward's capacity. Accordingly, we overrule Father's eight issues and affirm the probate court's guardianship orders.