

In The

# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00035-CV

_____

BRUCE WESLEY NICHOL, APPELLANT

V.

SUHAILA SAUD NICHOL, APPELLEE

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 2009-20902-158; Honorable Jonathan Bailey, Presiding

January 15, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Bruce Wesley Nichol, challenges the trial court's order rendered in response to his motion to modify the parent-child relationship between him and his son, E.W.N.[1] By four issues, he (1) questions the trial court's exclusion of E.W.N.'s recorded statement even though it was ordered pursuant to section 104.003 of the Texas Family

_____

[1]To protect the child's privacy, we refer to him by his initials. _See_ TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2013).

Code; (2) asserts error by the trial court in denying his request to modify the right to designate the primary residence of the child; (3) alleges the trial court abused its discretion in awarding attorney's fees to Appellee, Suhaila Saud Nichol, even though it did not find "good cause"; and (4) contends the trial court erred in ordering what school E.W.N. was to attend when the issue was not pled by Suhaila.  We affirm.

## BACKGROUND

On September 13, 2007, the judge of the 330th District Court of Dallas County signed a final decree of divorce between Bruce and Suhaila, appointing them joint managing conservators of their son, E.W.N., then almost ten years old.  Suhaila was granted the exclusive right to designate E.W.N.'s primary residence, and Bruce was awarded possession and access pursuant to a standard possession order.

On May 14, 2009, when E.W.N. was almost twelve, Bruce sought to modify the parent-child relationship by seeking an order granting periods for electronic and telephonic communications, notification of extracurricular activities and the appointment of a parenting coordinator.  Bruce's petition was later amended to include a request for the right to make educational decisions for E.W.N. and finally to become the managing conservator with the exclusive right to determine the child's primary residence.  During the course of the proceeding, Bruce had E.W.N. sign an affidavit of choice of parent which favored his father.  Suhaila responded with a counter-petition to modify seeking, among other things, an increase in child support.

In October 2010, Bruce filed a "Motion to Prerecord Testimony of the Child" which the trial court granted.[2] While giving his recorded statement, E.W.N. mentioned Bruce had made a secret recording of him in July 2010 during Bruce's summer extended possessory period.[3] Contending this recording was in violation of temporary orders, Suhaila filed a motion requesting, among other relief, that the recording be stricken. She also alleged E.W.N. recanted his testimony about wanting to live with his father.

Shortly before commencement of a jury trial, the trial court ruled E.W.N.'s recorded statement was inadmissible hearsay because no oath was administered and no preliminary questions were asked of the child which would indicate he understood his testimony was to be truthful. Rather than subjecting the child to the stress of testifying in front of a jury, Bruce withdrew the case from the jury, and in May of 2011, the matter proceeded as a bench trial before the 431st District Court of Denton County. On September 27, 2011, the trial court entered an order denying Bruce the exclusive right to designate E.W.N.'s primary residence, awarding him additional possession time, increasing child support and ordering that the child continue to be enrolled at the private school he was already attending, Legacy Christian Academy. The trial court found the case to be a high-conflict case and appointed a parenting facilitator per section 153.606 of the Texas Family Code. The court also awarded $20,000 in attorney's fees to Suhaila. Per Bruce's request, the trial court filed *Findings of Fact and Conclusions of Law.*

---

[2]The motion was granted by a visiting judge.

[3]The gist of E.W.N.'s recorded statement was that he loved both his parents but wanted to live with his father.

**ISSUE ONE**

Bruce asserts the trial court's exclusion of E.W.N.'s recorded statement was improper and constituted an abuse of discretion. We disagree. Evidentiary rulings are committed to the trial court's sound discretion. *Bay Area Healthcare Group., Ltd.* v. *McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court's decision to exclude evidence is reviewed for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999).

The trial court determined it was unclear whether the visiting judge's order granting Bruce's motion to record E.W.N.'s statement was entered pursuant to section 104.003 of the Texas Family Code, which provides in part, "[t]he court may . . . order that the testimony of the child be taken outside the courtroom and be recorded for showing in the courtroom before the court . . . ." TEX. FAM. CODE ANN. § 104.003(a) (West 2008). The trial court specified in its ruling that the Legislature's choice of the word "testimony" in the statute implies that an oath or admonishment be administered.

Bruce takes issue with the trial court's ruling and contends that no oath or admonishment need be given to E.W.N. to render his statement admissible. He relies on two cases involving sexual assault of children who were not required to take an oath. *See Hollinger v. State*, 911 S.W.2d 35, 39 (Tex. App.—Tyler 1995, pet. ref'd); *Gonzales v. State*, 748 S.W.2d 510, 512 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). In holding that a minor child was not required to take an oath, the Tyler Court noted that

questions asked of the minor child were sufficient to impress upon the child the duty to be truthful. *Hollinger*, 911 S.W.2d at 39.

Rule 603 of the Texas Rules of Evidence provides:

before testifying, every witness is required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.

The reliability of a child witness's testimony may be assured absent a face-to-face encounter through the combined effect of the witness's testimony under oath (or other admonishment) appropriate to the child's age and maturity to testify truthfully and cross-examination. *See Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

Before a child's recorded statement may be admitted into evidence there must be a showing of competence at the time the testimony is given and a showing that an oath was given or some discussion had with the child about the issue of truthfulness. *See Torres v. State*, 33 S.W.3d 252, 255 (Tex. Crim. App. 2000) (dealing with article 38.071 entitled "Testimony of child who is victim of offense.") The transcription of E.W.N.'s statement reflects that Bruce's attorney began questioning him without any oath or admonishments being given. E.W.N. was not asked if he understood his responsibility to be truthful. Bruce references excerpts from the statement which he asserts reflect E.W.N.'s understanding of the difference between a lie and the truth. However, nothing in the transcription of the statement demonstrates that any of the attorneys questioning him impressed upon him the duty to be truthful. Because the trial court's decision to exclude the testimony was consistent with guiding rules and principles, we conclude the

5

trial court did not abuse its discretion in excluding that statement. Issue one is overruled.

**ISSUE TWO**

Bruce further asserts the trial court erred in denying his request to modify the right to designate the primary residence of his child. Again, we disagree. A trial court's order modifying conservatorship is reviewed for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). To prevail on a modification, Bruce was required to show modification would be in the child's best interest and either circumstances had materially and substantially changed since the rendition of the divorce decree or the child, who was at least twelve years of age, expressed to the court in chambers the name of the person who is his preference to have the exclusive right to designate his primary residence. TEX. FAM. CODE ANN. § 156.101(a)(1)(A), (2) (West Supp. 2013).

Bruce seeks support for his argument that the trial court erred in denying his request to modify conservatorship from E.W.N.'s recorded statement. However, we have already determined the trial court properly excluded that statement and will not look to it to analyze Bruce's argument on this issue. Instead, we look to the evidence presented at the modification hearing.

Even though E.W.N. signed an affidavit on November 1, 2009, expressing his preference to have his father designate his primary residence,[4] the trial court was still required to determine whether such a change was in his best interest. *See* TEX. FAM.

---

[4]Suhaila testified she believed E.W.N. was pressured into signing the affidavit.

CODE ANN. § 153.002 (West 2008). In determining best interest, the trial court considers the following "*Holley* factors": the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child; the stability of the home; the acts or omissions of the parent; and any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Other factors a court might consider in a modification include the child's stability as well as the need to prevent constant litigation in child custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000).

The evidence on E.W.N.'s preference as to where he wanted to reside was contradictory. Notwithstanding E.W.N.'s affidavit of November 1st, Suhaila testified he never told her his preference and, on December 9, 2009, E.W.N. scribed a letter to the trial judge expressing his wish to "live with mom." In that letter, E.W.N. also asked to have more time with his "dad," continue at his same school (Legacy Christian Academy) and see more of his sister.[5]

E.W.N. suffers from dyslexia, anxiety, asthma, allergies and hearing loss. His school provides a dyslexia remediation program. He is being treated by a child psychologist for his anxiety[6] and also undergoes language therapy. Bruce contemplated removing E.W.N. from private school and enrolling him in public school where his dyslexia might go untreated. During Bruce's extended period of possession

---

[5]E.W.N. has an adult half-sister who resides with their mother.

[6]Bruce testified he believed Suhaila had E.W.N. treated by a child psychologist for legal reasons and not for his mental health.

in summer 2009, he did not arrange for E.W.N. to attend his language therapy sessions. Bruce also wanted to terminate E.W.N.'s treatment for anxiety even though shortly after returning from an extended visit with his father, he began experiencing nightmares and suffered a stress-induced anxiety attack.

E.W.N. participated in Scouts and his mother was the curriculum master. Bruce participated in some Scouting events. He also participated in extracurricular activities. A neighbor of Suhaila whose son belonged to the same troop as E.W.N. testified Bruce made negative remarks about her at a meeting and was asked to keep his comments to himself.

Pursuant to the original decree of divorce, Suhaila had the right to make educational decisions for the child. In the summer of 2009, she decided, after consulting with educators and E.W.N.'s language therapist, that it would be in his best interest to repeat the fifth grade to fill academic gaps. She did not believe he had received the proper foundation to advance to sixth grade. Bruce disagreed with her decision.

The record reveals Suhaila and Bruce communicated mostly by email regarding matters affecting the child. According to testimony given, their relationship was not amicable, and E.W.N.'s efforts to try to please both his parents sometimes exacerbated his anxiety. E.W.N. required medical attention for headaches, nausea, stomach aches, and a nose injury. Bruce testified he believed Suhaila "overreact[ed] to medical situations in an attempt to validate herself."

8

A social worker testified she interviewed both parents and E.W.N.'s half-sister. She also evaluated both parents' homes. She reviewed E.W.N.'s school records and numerous other documents and, in her opinion, the current conservatorship arrangement should remain in place, with Suhaila continuing as primary conservator.

E.W.N. began treatment with a child psychologist in August 2009. The psychologist characterized him as an anxious child but also described him as a great young man. He did not see any negative consequences of his being retained in the fifth grade and observed improvement in his level of confidence. He described E.W.N. as having a tendency to want to please everybody which resulted in him suffering from stress and feeling overwhelmed. E.W.N. also expressed he was comfortable and positive about attending Legacy Christian Academy. He expressed very positive feelings about both his parents, but the possibility of changing schools if he resided with his father was causing him anxiety. The psychologist testified that on the occasion he met Bruce, he invited him to talk after E.W.N.'s session, but Bruce declined.

The evidence shows E.W.N. enjoyed attending Legacy Christian Academy. The school's principal testified the campus had a specialist who works with dyslexic children. She described the child as polite and well behaved, but struggling with academics. She described him as doing "great" and his personality as "fun, outgoing, happy" while repeating fifth grade. One of E.W.N.'s teacher's testified that he worked hard in the program and was part of a success center where he could seek extra help.

The evidence shows Bruce and Suhaila are good parents and enjoy a good relationship with their son. They both have good jobs. Unfortunately, they lack the

ability to co-parent amicably. They disagree on E.W.N.'s education and emotional and mental health. Suhaila is pro-active and seeks out programs to fulfill her son's needs. She is very involved in his extracurricular activities. Based on the *Holley* factors, we conclude the trial court did not abuse its discretion in denying Bruce's request to modify conservatorship. Issue two is overruled.

**ISSUE THREE[7]**

Bruce contends the trial court abused its discretion when it awarded attorney's fees to Suhaila because no finding of "good cause" was ever made. Bruce relies on the holding in *Reames v. Reames*, 604 S.W.2d 335 (Tex. Civ. App.—Dallas 1980, no writ) for the proposition that in awarding attorney's fees in a non-enforcement suit affecting the parent-child relationship "the trial court's discretion is not unlimited, and no provision is made, absent good cause, for allowing an unsuccessful party recovery of [their] attorney's fees." We note the Dallas Court of Appeals has long since acknowledged the *Reames* decision as being superseded by statute in 1981 when the Legislature amended section 11.18(a) of the Family Code (now section 106.002) by deleting the phrase "as in other civil cases" from the final portion of the first sentence of that statute. *Goheen v. Koester*, 764 S.W.2d 830, 835 (Tex. App.—Dallas, 1990, writ denied) (holding that decision to award attorney's fees to child's mother, in a proceeding brought by the father who substantially prevailed on his claims, was not an abuse of discretion where mother was also successful on some of her claims). By deleting the "as in other

---

[7]We note Bruce changed the order of his issues in *Appellant's Brief.* Issue three in the first presentation of issues became issue four at page 7 and then issue three again at page 19. We will refer to Bruce's issues in the order in which they were originally presented.

10

civil cases" portion of the statute, the Legislature recognized the difficulty of deciding which party is the "prevailing party" in a family law case. *Id.* at 836.

Generally, section 106.002 of the Texas Family Code vests a trial court with broad discretion to award either party in a SAPCR proceeding a judgment for reasonable attorney's fees. *See* TEX. FAM. CODE ANN. § 106.002 (West 2008). *See also Tucker v. Thomas*, No. 12-0183, 2013 Tex. LEXIS 1035, at *11 (Tex. Dec. 13, 2013) (holding that in the absence of express statutory authority, a trial court may not award attorney's fees in a non-enforcement modification proceeding). In this case, Bruce initiated the litigation focusing on modification of the decree to grant him the exclusive right to designate E.W.N.'s primary residence and later on rights related to the child's education. While he was successful in obtaining some concessions (certainly not every concession requested), Suhaila was equally successful in obtaining an increase in Bruce's child support obligation. Given the complexity of this proceeding and the intricacies of the modification of the rights, privileges and duties of each parent, we cannot say the trial court abused its discretion in awarding Suhaila recovery of some of her attorney's fees. Issue three is overruled.

**Issue Four**

Bruce contends the trial court erred in ordering E.W.N. to attend Legacy Christian Academy when the issue was not pled by Suhaila.[8] Again, we disagree.

---

[8]Bruce's issue is not supported by citation to any legal authority which waives the issue on appeal. *See* Tex. R. App. P. 38.1(i). *See also Sunnyside Feedyard v. Metropolitan Life Ins. Co.*, 106 S.W.3d 169, 173 (Tex. App.—Amarillo 2003, no pet.). We nevertheless address the issue in the interest of justice.

A trial court's judgment shall conform to the pleadings. TEX. R. CIV. P. 301. *In re Guardianship of Winn*, 372 S.W.3d 291, 297 (Tex. App.—Dallas 2012, no pet.). The issue of E.W.N.'s education was raised by Bruce in his second amended petition to modify the parent-child relationship when he requested the court to grant him the "exclusive right to make decisions concerning the child's education . . . ." Suhaila raised the issue in her supplement to her fourth amended counter-petition by attaching E.W.N.'s letter to the trial court in which he requested to remain at Legacy Christian Academy. Assuming the issue of the child's education had not been raised by the pleadings, the issue was tried by consent. *See Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied) (unpled issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case). There is overwhelming evidence that the child's education was an issue being litigated. Issue four is overruled.

## CONCLUSION

Having overruled Bruce's four issues, the trial court's order modifying the parent-child relationship is affirmed.

Patrick A. Pirtle
Justice

12