**REVERSE, VACATE and AFFIRM; and Opinion Filed February 8, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01006-CV

### IN RE: THE GUARDIANSHIP OF SYDNEY AYN LAROE, AN INCAPACITATED PERSON

**On Appeal from the Probate Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. PR-09-3185-1**

## MEMORANDUM OPINION
Before Justices Bridges, Lang-Miers, and Stoddart
Opinion by Justice Bridges

This appeal involves the guardianship fight between Mother and Father over their incapacitated adult daughter who suffers from microcephaly. The probate court entered an agreed order naming Father as guardian in June 2010 (the Agreed Order). On November 3, 2011, Mother filed an Application for Modification of Guardianship in which she sought to remove Father as guardian. Father filed a motion to dismiss and both parties filed numerous motions over the next four years arguing over guardianship of Daughter. The probate court entered a final order on May 19, 2015, in which it vacated provisions in the Agreed Order that, according to Father, violated statutory provisions of the Texas Estates Code.

On appeal, Mother argues the probate court abused its discretion by (1) failing to apply controlling provisions of the estates code; (2) granting Father's requested modifications to the Agreed Order; (3) refusing to enforce the Agreed Order; (4) sanctioning Mother for filing certain documents in bad faith; and (5) denying Mother's requested modifications to the Agreed Order

by granting Father's partial motion for summary judgment and denying an evidentiary hearing on her motions. Mother also argues the probate court's findings of fact and conclusions of law are erroneous and not supported by sufficient evidence, and the November 4, 2015 child support order is void and legally erroneous. We reverse and vacate the probate court's August 21, 2015 sanctions order requiring Mother to pay $3,342.50 of outstanding attorney ad litem fees. In all other respects, the judgment of the probate court is affirmed.

**Background**

Mother and Father were never married but share a daughter together. Daughter was born with microcephaly and is unable to care for herself. In 2005, a family court entered a final order in a suit to modify parent-child relationship that determined the "parties should not be appointed joint managing conservators." It appointed Father sole managing conservator of Daughter and Mother possessory conservator. The order stated that Daughter requires "substantial care and personal supervision because of mental or physical disability and is not and will not be capable of self-support."

In September 2009, as Daughter approached eighteen years of age, Father filed an Application for Guardianship with Full Powers of the Person Only. At the time, Daughter lived with Father. The doctor's certificate of medical examination by Dr. Patricia Evans stated Daughter was "totally without capacity to care for herself and to manage her property" because of microcephaly and "moderate" mental retardation, meaning her IQ was between 35-50. Daughter "will never be able to function independently and will always require close, on-going, adult supervision and care."

On March 5, 2010, Father filed a Motion to Appoint Conservator as Guardian Pursuant to Probate Code section 682A and requested the probate court "to the extent possible, . . . preserve the terms of possession and access to the Proposed Ward that applied before the court obtained

–2–

jurisdiction," referring to the 2005 modification order. The probate court signed the Agreed Order appointing Father as guardian with full powers of the person on June 4, 2010. The Agreed Order contained provisions for possession, access, and support of Daughter. Specifically, Daughter would primarily reside with Father, but Mother had specific periods of possession, which were equivalent to a Texas Standard Possession Order. According to Mother, Father agreed to these provisions, and in exchange, Mother agreed to Father's appointment as guardian.

Sometime in 2010, Daughter began "unpredictably" lashing out at her stepmother. During this time, Daughter stayed with her paternal grandmother, and Father engaged in some behavior modifications with Daughter that were successful.

Also near the same time, Father discovered a group home called St. Nicholas located near Mother's and Father's residences. Father sent Mother a letter on October 14, 2011, informing Mother that "[Daughter] will be residing at St. Nicholas" and explained the benefits of the living arrangement.

Mother filed an Application for Modification of Guardianship pursuant to section 672 of the probate code on November 3, 2011. In the motion, she argued that because of conflicts in Father's home, Father no longer wanted Daughter to live with him. Mother claimed she had been willing at all times to allow Daughter to live with her, but Father refused. She also explained that since the conflicts, Mother had possession of Daughter more than the standard possession the parties agreed to. She claimed that rather than allow Daughter to live with her, Father instead notified her he intended to move Daughter to St. Nicholas.

Following a hearing on November 28, 2011, the probate court concluded Mother's application for modification of guardianship appeared to argue for modification of conservatorship in the family law context, which the probate court recognized as different than guardianship proceedings. According to the Agreed Order, Mother needed to file a motion in

–3–

opposition to Father trying to move Daughter's residence, which she had not done. The relevant provision of the Agreed Order reads as follows:

> In the event that Guardian [Father] decides that the Ward will change residence from his home to a group living facility or residence outside of his home, other than in an emergency, he will provide thirty (30) days written notice to [Mother] and, if [Mother] disagrees, she will have the right to file a motion in opposition within said thirty (30) days, and she will have the right to an evidentiary hearing on any change of residence of the Ward prior to the change.

Without such a pleading or evidence suggesting removal of Father as guardian was necessary, the probate court determined it had nothing to rule on and Father could take "whatever steps the guardian deems to be appropriate." However, the probate court provided Mother the opportunity to file a proper motion tracking the language in the Agreed Order.

Pursuant to the terms of the Agreed Order, Mother filed a Motion in Opposition to Proposed Placement and Request for Evidentiary Hearing on November 28, 2011. The motion asked the court to set an evidentiary hearing, deny Father's request to place Daughter in a group home, and allow Daughter to live with her. Father filed a motion to dismiss arguing the motion in opposition was untimely. Mother then filed an amended motion on December 8, 2011. However, Mother failed to move forward on her motion by asking the probate court to set an evidentiary hearing; therefore, no further actions were taken on her motion in opposition.

Father's original plans to move Daughter into St. Nicholas later changed after he became aware of the male staffing ratio, which made him uncomfortable. He then found an apartment near both parents that would allow Daughter, with some assistance, to continue gaining independence. He sent Mother a letter on February 23, 2012 informing her that Daughter would not be residing at St. Nicholas, "as I had previously told you in my October 14, 2011, letter" and told her he had secured a condominium in a gated community.

–4–

On March 23, 2012, Mother filed a Motion to Remove Guardian/Review Guardianship. In her motion, she stated she received a certified letter on February 23, 2012 explaining Father had leased an apartment and hired staff to take care of Daughter. She claimed she did not receive notice of this change prior to Daughter being moved. She argued Father should be removed as guardian because he (1) abdicated his duty to Daughter by allowing Mother to care for her in excess of the court-ordered possession schedule; (2) acted in such a way as to cause Daughter severe stress; and (3) violated the Agreed Order by preventing Mother from exercising her right to an evidentiary hearing and not keeping her informed about Daughter's welfare.

After Daughter moved into the apartment, Father continued looking for group home residential opportunities for Daughter and discovered Cornerstone, another home for adults with special needs located in Collin County that could possibly accommodate Daughter. Father told Mother about the home after Daughter went on a day visit. Despite Father's concerns that Mother might try to sabotage the opportunity, he mentioned Cornerstone again during a December 12, 2012 court-ordered mediation.

Father's concerns were confirmed a few days after mediation when Mother sent emails to the Cornerstone board of directors and advisory board members, which stated many things about Daughter's behavior that Father vehemently denied. According to Father, Mother never spoke to anyone at Cornerstone or made any independent inquiry into the home before sending her emails. Because of limited living options for adults with special needs, Father believed Daughter would be left with no other options in North Texas if she lost the chance at Cornerstone.

On February 4, 2013, Father filed an application for temporary restraining order, temporary injunction, and permanent injunction to stop Mother's communications with Cornerstone, which he described as a purposeful attempt to sabotage Daughter's chances of living there. At the same time, Father filed a Motion to Modify Agreed Order requesting the

probate court modify the primary residence requirement limiting Daughter's residence to Dallas County. He also asked the court to modify the Agreed Order to show he is Guardian with "all rights and duties proscribed [sic] the Texas Probate Code without restriction," which would remove, among other things, the notice requirement for changing Daughter's residence and allow him to determine Mother's visitation.

The probate court held a hearing and acknowledged the Agreed Order "was pretty unworkable." Mother testified during the hearing and explained her emails were not intended to harm Daughter's opportunity to live at Cornerstone or deceive anyone about Daughter's condition. She strongly believed, "She's better placed in her mother's home and that's the truth."

At the conclusion of the hearing, the probate court issued an injunction prohibiting Mother from communicating with any Cornerstone board members about the possibility of Daughter moving there because, based on the testimony from Rhonda Hunter, the guardian ad litem, Cornerstone "was not an appropriate place for her, so no one needs to communicate with Cornerstone." The probate court also enjoined Father from communicating with Cornerstone and moving Daughter from her current location without the court's approval.

Mother filed a Second Amended Application for Modification of Guardianship on March 4, 2013. She filed it pursuant to probate code sections 606, 672, 694, and 761. She asked the probate court to review the Agreed Order and described numerous alleged violations by Father in his role as guardian. She again asked the court to remove Father as guardian and appoint her guardian of Daughter's person.

Father filed a motion for partial summary judgment on June 24, 2013 arguing that all of Mother's pleadings failed as a matter of law because they did not establish any ground for

removing him as guardian under probate code section 761—the only legal basis for removing a guardian under Texas law.

The probate court held a hearing on Father's partial motion for summary judgment on February 20, 2014. The court vacated the temporary injunction with respect to Father's inability to communicate with Cornerstone, but continued to enjoin him from changing Daughter's permanent residence without prior notice to the court and an opportunity for Mother to object. The court granted the traditional motion for partial summary judgment because as a matter of law, "there is no basis for removal" of Father as guardian. It partially relied on the fact it had approved every annual guardianship report since 2012 and "cannot justify treating him any differently than any other guardianship of the person in this state." The court signed a written order on March 10, 2014.

The probate court entered yet another order approving the annual guardianship report on August 7, 2014.

In January 2015, the parties finally tried the issues concerning Father's motion to modify the Agreed Order.[1] Father testified that when Daughter approached the age of eighteen, he filed an application for guardianship in the probate court. Nothing was transferred from family court, and it was not a continuation of any family court matter. Rather, he filed a new, independent action. Father testified that after entry of the Agreed Order, he took the oath and paid the bond to serve as guardian.

He explained that because of the few housing options for Daughter, he was unable to pursue Daughter's best interest with the geographical restriction in place. Thus, Father claimed the Agreed Order was unworkable. Father explained he wanted to achieve a predictable and

---

[1] By this time, Father, an attorney, was representing himself.

consistent environment for Daughter with the families' involvement, while predominately focusing on Daughter's independence and self-reliance.

When Father attempted to raise issues regarding Mother's past struggles with drugs, alcohol, and mental illness, the probate court repeatedly stated Mother's "fitness is not an issue" because "issues are different in Probate Court." The court acknowledged that if it was trying to establish guardianship, then suitability would be an issue, but that was not the subject of the hearing. The court further emphasized it was not interested in events that occurred prior to the Agreed Order.

Mother testified she had not visited any group homes for Daughter because "there's no need to." She explained Daughter stayed with her almost the whole month of January 2011 and more than half of February, which violated the visitation schedule. She testified Father did not call or check on Daughter for an entire month. She expressed concern that if a specified access schedule was not in place she would not see Daughter anymore. However, she agreed Father had allowed her more visitation than required by the Agreed Order.

Hunter, the guardian ad litem, testified Daughter's "current living arrangement is one which continues to be in her best interest. I have received no information regarding any other home or group home that might be considered, and so I cannot give the Court additional information regarding a group home setting." She explained Father was particular, concerned, and meticulous in his inquiries for Daughter's housing options. She had no objection to lifting the geographic restriction based on the limited number of options available in Dallas County. She acknowledged the Mother-Father relationship was "antagonistic," and she was unsure that could change. She believed any attempt by Father to cut off Daughter from Mother and her

family would negatively affect Daughter. But she said Father indicated he would not do that.[2] She agreed Father had done a good job as guardian and made significant effort to promote Daughter's self-reliance and independence.

The probate court signed an order in Father's favor, dated May 19, 2015, titled "Guardianship Order with Full Powers of the Person Only." It also signed an order vacating all provisions and restrictions in the Agreed Order pertaining to possession, access, residence, legal domicile, and education of Daughter that were unsupported by the estates code.

Even though the probate court finally granted Father's requested relief, the parties' four-year battle continued. The court held another hearing on July 9, 2015, to consider the remaining outstanding motions. These included (1) Father's supplement to his motion for sanctions and fees originally filed on August 22, 2014, in which he argued that throughout the litigation, Mother had filed numerous "groundless, frivolous motions and applications that were brought in bad faith and for the purpose of delay and harassment"; (2) Father's motion for contempt, which he withdrew at the beginning of the hearing; and (3) Father's motion to strike additional, late documents that Mother filed on February 2, 2015, in which she tried to present a psychological evaluation performed on Daughter that occurred without Father's consent as guardian. The court granted the motion to strike. It also granted Father's sanctions motion and ordered Mother to pay $3,342.50, which represented one-half of Hunter's outstanding ad litem fees.

The probate court entered findings of fact and conclusions of law on July 20, 2015. Mother filed her notice of appeal challenging the May 19, 2015 guardianship order and numerous other orders, including but not limited to, the denial of her motions to modify

---

[2] Since submission of this appeal, Father has moved Daughter to an "institution" in Louisiana and Mother alleges she has been denied any information about or access to Daughter.

guardianship, the imposition of sanctions against her, and the granting of Father's motion for partial summary judgment.

## Did the Probate Court's Interpretation of the Agreed Order and the Texas Estates Code Result in an Abuse of Discretion?

Mother argues the probate court abused its discretion by incorrectly interpreting the law in relation to the Agreed Order. She specifically argues (1) section 1103.002 of the estates code applies to the Agreed Order and (2) chapter 1202's provisions for modifying a guardianship apply to Father's motion to modify and the Agreed Order. Father responds the probate court conformed the Agreed Order to the estates code. Furthermore, he asserts a plain reading of the statutes indicates the section and chapter are inapplicable to the present facts.

Both parties agree we review guardianship determinations for an abuse of discretion. *See In re Keller*, 233 S.W.3d 454, 459 (Tex. App.—Waco 2007, pet. denied). To determine whether a probate court abused its discretion, we must decide whether the probate court acted without reference to any guiding rules or principles. *In re Guardianship of Alabraba*, 341 S.W.3d 577, 579 (Tex. App.—Amarillo 2011, no pet.). Where, as here, the probate court issued findings of fact and conclusions of law, we do not conduct an independent review of findings of fact under traditional legal and factual sufficiency standards. *Id.* Rather, legal and factual sufficiency are factors that can be considered in determining whether an abuse of discretion occurred. *Id.* We view the evidence in the light most favorable to the probate court's decision, and an abuse of discretion does not occur when the court's decision is based on conflicting evidence. *Id.*

First, we consider whether the probate court abused its discretion by concluding section 1103.002 does not apply to the Agreed Order. Section 1103.002, titled "Appointment of Conservator as Guardian Without Hearing," provides the procedure for appointing guardians for minors before they reach the age of majority. TEX. ESTATES CODE ANN. § 1103.002 (West 2014). Mother emphasizes that section 1103.002(b)(2) states the probate court shall "to the

extent possible preserve the terms of possession and access to the ward that applied before the court obtained jurisdiction of the guardianship proceeding." *Id*. § 1103.002(b)(2). She contends that because Father moved for guardianship pursuant to section 682A of the Texas Probate Code (recodified as estates code section 1103.002) and the parties agreed to the terms of the Agreed Order, the parties simply submitted the order to the probate court for signature and no evidentiary hearing occurred. Accordingly, Mother claims section 1103.002 applied as a matter of law to the Agreed Order, and the probate court abused its discretion by concluding otherwise and by ignoring the "Legislature's edict" that a guardianship order should generally preserve the terms of possession and access before the court obtained jurisdiction of the guardianship proceedings.

Mother's argument is flawed for several reasons. First, her assertion that no evidentiary hearing occurred before the court entered the Agreed Order "because the parties agreed to the Agreed Order and simply submitted the order to the court for signature" is not supported by the record. Rather, the record indicates the court held a hearing. The Agreed Order itself states, "On the 4th day of June 2010, came on to be heard the Application of Guardianship of the Person Only of [Daughter] brought by Applicant, [Father]." It then lists the appearances of Father's counsel, Mother's counsel, and Daughter's attorney ad litem.

During the January 20, 2015 hearing, at which the June 4, 2010 hearing was discussed, Father testified on more than one occasion, without objection, that the Agreed Order was entered in an "open hearing" after which he took the guardian oath and paid the required bond. While cross-examining Father, Mother's attorney emphasized the application of section 1103.002 only to the extent it encouraged preserving the status quo.[3] Counsel did not discredit Father's claim

---

[3] Counsel asked, "Do you disagree with Section 1103.002 of the Estate Code, which says, 'To the extent possible preserve the terms of possession and access that applied in the Court before the Court obtained Jurisdiction?' Do you think that's inappropriate in this case?" Father objected that the section did not apply and the court recognized the issue but asked the parties to move along.

–11–

that a hearing occurred prior to entry of the Agreed Order. In fact, during Father's cross-examination of Mother, Mother admitted she "vaguely" remembered the hearing in which the probate court entered the Agreed Order.

Finally, after the January 20, 2015 hearing, Mother requested additional and amended findings of fact and conclusions of law. In her request, she asked the court to delete "Conclusion of Law No. 16," which stated, "The TEXAS ESTATES CODE section 1103.002 Appointment of Conservator as Guardian Without Hearing does not apply in this matter because this section is expressly limited to only those situations where there is no hearing and a hearing occurred in this matter . . ." She argued section 1103.002 was irrelevant and further alleged it was legally incorrect because the current probate judge "did not hear the evidence pertinent to the original June 4, 2010 Order and cannot make underlying findings with respect to that order." Again, she did not contest that a hearing occurred and the record indicates evidence was heard. Consequently, the probate court did not abuse its discretion by concluding that section 1103.002, by its express terms, does not apply to this proceeding because a hearing occurred before the probate court signed the Agreed order.

In reaching this conclusion, we are unpersuaded by Mother's statement that Father "sought, and the court ordered, the guardianship in 2010 pursuant to section 1103.002." In support of her argument, Mother cites to Father's Motion to Appoint Conservator as Guardian Pursuant to Section 682A (predecessor to estates code section 1103.002) filed on March 5, 2010. While it is undisputed Father's motion titled and referenced section 682A, his original application for guardianship with full powers of the person filed on September 30, 2009 did not reference section 682A. Moreover, the Agreed Order does not reference section 682A because, as discussed above, a hearing occurred; therefore, the probate court did not ultimately grant the guardianship pursuant to that section.

We next consider whether the probate court abused its discretion by concluding chapter 1202 did not apply "because Sections 1202.001 and 1202.051 are expressly limited to the situations wherein the Court is considering the termination or modification of a guardianship of the person because of restoration of all or part of the ward's capacity, and that situation does not present in this matter."

To support her argument, Mother relies on the probate court's oral representation during trial that it was relying on chapter 1202. She also cites the title of chapter 1202, "Modification or Termination of Guardianship." She then argues the probate court abused its discretion by not applying the chapter, which would have required Father to present evidence to obtain modification and required the court to make specific findings to support modification—neither of which she claims occurred. *See* TEX. ESTATES CODE ANN. §§ 1202.152 (requiring applicant to present written letter or certificate of physician describing ward's abilities), .153 (requiring probate court to make certain findings by a preponderance of the evidence regarding ward's abilities and need for modification).

Father responds the probate court did not abuse its discretion because chapter 1202 does not apply to these facts. He argues it applies only when a ward is not totally incapacitated, and the chapter's reference to modification of a guardianship, when read in context of the statute, refers only to a party's request for modification because of some level of restoration of a ward's capacity and not *any* request for modification. We agree with Father.

First, we cannot look to comments the judge makes from the bench as a substitute for findings of fact and conclusions of law. *See Pearson v. Pearson*, No. 03-13-00802-CV, 2016 WL 240683, at *5 (Tex. App.—Austin Jan. 15, 2016, no pet.) (mem. op.). Thus, the probate court's written findings supersede any oral statements regarding the application of chapter 1202. *See Maeberry v. Gayle*, 955 S.W.2d 875, 878 n.3 (Tex. App.—Corpus Christi 1997, no pet.); *see*

–13–

*also Harberg Masinter Co. v. Jermain*, No. 05-98-00102-CV, 2000 WL 1048500, at *5 (Tex. App.—Dallas, July 31, 2000, no pet.) ("Even if there is a conflict, an oral pronouncement does not 'substitute for written findings of fact and conclusions of law'").   Second, under the Code Construction Act, "[t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute."   TEX. GOV'T CODE ANN. § 311.024 (West 2013). Consequently, the title of the chapter and subchapter do not control the content of the statute or dictate our interpretation of it.  We consider the language of the statute itself.

We recognize chapter 1202 is titled "Modification and Termination of Guardianship," and subchapter B is titled "Application for Complete Restoration of Ward's Capacity or Modification of Guardianship."   However, based on an overall reading of the statutory provisions, we cannot agree with Mother that chapter 1202 applies to all guardianship modifications and, more specifically, to Father's motion to modify.

Section 1202.051(1) states the following:

> A ward or any person interested in the ward's welfare may file a written application with the court for an order:
>
> > (1) finding that the ward is no longer an incapacitated person and ordering the settlement and closing of the guardianship;
> >
> > (2) finding that the ward lacks the capacity, or lacks sufficient capacity with supports and services, to do some or all of the tasks necessary to provide food, clothing, or shelter for himself or herself, to care for the ward's own physical health, or to manage the ward's own financial affairs and granting additional powers or duties to the guardian; or
> >
> > (3) finding that the ward has the capacity, or sufficient capacity with supports and services, to do some, but not all, of the tasks necessary to provide food, clothing, or shelter for himself or herself, to care for the ward's own physical health, or to manage the ward's own financial affairs and:
> >
> > > (A) limiting the guardian's powers or duties; and

–14–

> (B) permitting the ward to care for himself or herself, make personal decisions regarding residence, or manage the ward's own financial affairs commensurate with the ward's ability, with or without supports and services.

*Id.* § 1202.051 (West Supp. 2016). This section provides a process by which a person may petition the court to consider three possible changed circumstances requiring modification: (1) whether the ward is no longer incapacitated, (2) whether the ward lacks the capacity to perform some necessary tasks, or (3) whether the ward has the capacity to perform certain necessary tasks. None of these apply to Daughter. It is undisputed Daughter is totally incapacitated and will remain so for the rest of her life. Neither Mother nor Father sought modification of the Agreed Order because of a change in Daughter's mental capacity. Rather, Father sought to modify the Agreed Order because he believed certain provisions conflicted with his rights as guardian under the estates code. Accordingly, the probate court acted within its discretion by determining that chapter 1202 and, specifically section 1202.051, does not apply to this case. Because the probate court did not abuse its discretion in its application of the estates code, we overrule Mother's first issue.

**Did the Probate Court Abuse its Discretion by Modifying the Agreed Order?[4]**

In her second issue, Mother argues the probate court abused its discretion by granting Father's requested modifications to the Agreed Order because: (1) the May 19, 2015 order terminated certain parental rights held by Mother; (2) Father's basis for modification fails as a matter of law; (3) the court was barred from considering Father's motion to modify; (4) Father failed to meet his burden of proof for modification; (5) the evidence is legally and factually insufficient to support modification of the Agreed Order; (6) the May 19, 2015 order places

---

[4] The May 19, 2015 order vacated provisions 10-25 of the Agreed Order.

Daughter's safety at risk; and (7) the court abused its discretion by excluding certain evidence and striking her offer of proof.

We begin by addressing Mother's argument that Father's stated basis for modification fails as a matter of law. Father asked the probate court to remove those portions of the Agreed Order that involved terms of possession and access, placed limitations on Father, and appointed joint guardians because such terms were contrary to the estates code. Mother contends the estates code contemplates such provisions, and "most importantly," because Father agreed to the order, he cannot challenge it.

Mother first relies on section 1103.002(b)(2) to support her position that the probate court should "to the extent possible preserve the terms of possession and access to the ward. . . ." However, as discussed above, we have determined the trial court did not abuse its discretion by concluding this section does not apply in this case.

She next argues the estates code does not forbid joint guardians, but expressly permits joint guardianship. Section 1104.001 states "only one person may be appointed guardian of the person or estate, but one person may be appointed guardian of the person and another person may be appointed guardian of the estate, if it is in the best interest of the incapacitated person or ward." TEX. ESTATES CODE ANN. § 1104.001(a) (West 2014). Although the section does not prohibit joint appointment of guardians, it only allows for joint guardianship in limited circumstances, none of which are present here. *See id.* § 1104.001(b). Specifically, Mother and Father are not and never were married, and they have never been joint managing conservators. *Id.* §1104.001(b)(1), (2), (4)(B). Thus, the probate court did not abuse its discretion by modifying the Agreed Order to appoint one person as Daughter's guardian.

Next, relying on section 1202.056(1), Mother claims the estates code expressly requires the probate court's order explain the limitations placed on the guardian. As discussed

previously, this section applies to modifications because of a change in capacity, which is not the case here.

Finally, Mother relies heavily on the fact Father negotiated and agreed to the terms of the Agreed Order, which was workable to both and provided her with certain rights in relation to Daughter. She argues Father has waived any challenges to the Agreed Order and should not be allowed to complain about an agreement he negotiated and entered into.

We first address whether Father waived any alleged defects between the Agreed Order and the estates code by agreeing to the order. Generally, when a party agrees to an order, he waives any error "except such as might go to the jurisdiction of the court." *Minnick v. Roger*s, 873 S.W.2d 420, 422 (Tex. App.—Tyler 1994, no writ). However, to agree with Mother would mean parties could never challenge an agreed order that becomes unworkable in the future because of conflict or changed circumstances. Guardianship proceedings, like those in family court, are often fluid and to hinder a party's ability to challenge an agreed order is simply unworkable.[5]

We recognize the "strong public policy in favor of preserving the freedom of contract." *See Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008). However, freedom of contract is not unbounded, and courts have long recognized an agreement which violates a valid statute is illegal and void. *Id*. Neither party has cited any authority, and this Court has found none, in which parties negotiated a guardianship agreement that included provisions outside the estates code. However, section 1151.051(a) entitles the guardian to "take

---

[5] For this reason, we are also unpersuaded by Mother's argument that Father cannot treat an order as "both right and wrong," essentially challenging only those provisions affecting Mother but seeking to affirm those applicable to him. This argument is often referred to as the acceptance of the benefits doctrine. "The doctrine is most commonly applied in divorce cases in which one spouse accepts certain assets awarded by the judgment and then seeks to appeal the remainder of the judgment." *Thornton v. Cash*, No. 14-11-01092-CV, 2013 WL 1683650, at *8 (Tex. App.—Houston [14th Dist.] Apr. 18, 2013, no pet.) (mem. op.). Mother has failed to cite to any case in which the doctrine has been applied in a dispute over guardianship of a person.

–17–

charge of the person of the ward." TEX. ESTATES CODE ANN. § 1151.051(a). Section

1151.051(c) then lists the following relevant rights and duties of the guardian of the person:

> (1) the right to have physical possession of the ward and to establish the ward's legal domicile;
>
> (2) the duty to provide care, supervision, and protection for the ward;
>
> (3) the duty to provide the ward with clothing, food, medical care, and shelter;
>
> (4) the power to consent to medical, psychiatric, and surgical treatment other than the inpatient psychiatric commitment of the ward . . .

*Id.* § 1151.051(c). These rights and duties are statutorily mandated by the legislature and belong

to the guardian, regardless of any agreement by the parties. *See, e.g., Hous. Auth. of El Paso v.*

*Lira*, 282 S.W.2d 746, 748 (Tex. App.—El Paso 1955, writ ref'd n.r.e.) ("It seems elementary

that parties cannot by agreement repeal or modify a statute."). To allow someone who has not

been appointed guardian to have any of these rights and duties, or any not provided for in the

code, infringes on the guardian's ability to act on behalf of the ward because of potential

interference from another party (as evidenced by this case). It likewise frustrates the purpose of

a guardianship, which is to "promote and protect the well-being of the incapacitated person,"

when a guardian is constantly battling interference from a non-guardian. *Id.* § 1001.001 (West

Supp. 2016).

We agree with Mother that section 1151.051(c) is not necessarily an exhaustive or

exclusive list of the guardian's powers and the code provides some limitations on a guardian;

however, this does not support her claim that such limitations "cannot be interpreted as making it

'illegal' to impose limitations upon a guardian." Mother's argument misses the crux of Father's

complaint. Father's complaint is not that any limitation on his rights or duties under section

1151.051(c) is illegal, but only that this Agreed Order is illegal to the extent it provided Mother

with rights to which she was not entitled pursuant to the estates code. Again, Mother is not a joint guardian, and the Agreed Order imposes limitations on Father by giving a non-guardian rights that infringe on his statutorily-defined duties as stated in section 1150.051.

We do not agree with Mother's contention that the deletion of conflicting provisions violates her due process rights by allowing a guardianship to "automatically trump" her access to Daughter. *See Quillion v. Walcott*, 434 U.S. 246, 255 (1978) (recognizing relationship between parent and child is constitutionally protected). Section 1151.055 provides a procedural vehicle for a relative in Mother's situation to seek access to a ward and for the court to specify the frequency, time, place, location, and any other terms of access, if granted. TEX. ESTATES CODE ANN. §1151.055(b) (West Supp. 2016) ("A relative of a ward may file an application with the court requesting access to the ward, including the opportunity to establish visitation or communication with the ward."); *Id*. §1151.055(f)(2). While requiring such additional procedural hoops may be burdensome to Mother, the legislature has clearly stated what she must do as a non-guardian parent to gain access to Daughter, and such procedures are consistent with the legislature's intent of insuring that non-guardians do not impede the guardian's ability to act in the ward's best interest. Thus, the probate court did not abuse its discretion by vacating certain provisions of the Agreed Order because the stated basis for modification does not fail as a matter of law.

We now consider whether the probate court was barred from considering Father's motion to modify. Mother's argument relies on section 1202.055, which we concluded does not apply. Regardless, Mother has failed to cite this Court to any part of the record supporting her argument that Father filed an application for modification of guardianship within one year of the last application for modification. *See* TEX. ESTATES CODE ANN. § 1202.055 (West 2014) ("A person may not reapply for complete restoration of a ward's capacity or modification of a ward's

–19–

guardianship before the first anniversary of the date of the hearing on the last preceding application, except as provided by the court on good cause shown"). She asserts the probate court heard her motion to modify on February 20, 2014 and that Father did not wait the required year to file his application to modify. It appears from our review of the record that Father filed his motion to modify on February 4, 2013, which was almost one year *before* Mother's hearing. She has not provided this Court with any citation to a different document of Father's she is relying on, and we are not required to search through voluminous records to find support for her argument.[6] *See Hall v. Dougla*s, 380 S.W.3d 860, 868 (Tex. App.—Dallas 2012, no pet.). Accordingly, the probate court was not barred from considering Father's motion to modify.

We next turn to whether Father met his required burden of proof for modification. Mother claims (1) Father failed to present evidence from a Texas-licensed physician as required by section 1202.152; (2) there is no evidence and findings as required by sections 1202.0153 and 1202.156; and (3) there is no evidence or finding regarding Daughter's preferences. Once again, because chapter 1202 does not apply, Mother's first two arguments will not support an abuse of discretion by the probate court in modifying the Agreed Order. Mother relies on a secondary source to support her argument that a probate court must give due consideration to the ward's preference. *See* TEX. JUR. 3D *Guardianship and Conservatorship* § 76 (2014). However, Texas Jurisprudence cites to section 1104.002, which only requires the probate court to make "a reasonable effort to consider the incapacitated person's preference" *before* appointing a guardian. *See* TEX. ESTATES CODE ANN. § 1104.002 (West Supp. 2016). Mother did not challenge the original appointment of Father as guardian; rather, she agreed to it and only later sought to modify the Agreed Order. Mother has not provided any other authority, and we have found

---

[6] This record consists of eighteen volumes of reporter's records and six volumes of clerk's record.

none, requiring a probate court to consider the preference of a totally incapacitated ward before modifying a guardianship. Accordingly, this section does not apply.

We next consider whether the evidence was legally and factually sufficient to support modification of the Agreed Order. Mother specifically argues no evidence supports that any modification was in Daughter's best interest and such modifications must be in her best interest.[7]

First, Mother's reliance on any family code provisions regarding best interest are inapplicable to these facts. Although this case began in the family court, the guardianship is now a probate proceeding governed by the estates code, not the family code. That being said, we acknowledge that best interest of the ward is considered when appointing a guardian. *See* TEX. ESTATES CODE ANN. § 1104.101 ("The court shall appoint a guardian for an incapacitated person . . . according to circumstances and considering the incapacitated person's best interests."). However, this is a modification proceeding and not the original appointment of a guardian. And the crux of the modification sought was to remove those provisions from the Agreed Order that provided a non-guardian (Mother) with rights the estates code only provides to the guardian of the person (Father). Thus, we agree with Father that Mother's objections to the vacated provisions of the Agreed Order involve Mother's alleged "rights" and interests and not those of Daughter. Essentially, Mother is arguing what she believes is in her best interest in her attempts to be an involved parent in Daughter's life. We cannot fault her for this; however, as discussed previously, Mother cannot do this through an order that violates the estates code and infringes on those rights and duties specifically given to Father as guardian of a person. Accordingly, a best interest analysis has no place given the facts before us.

---

[7]Mother argues there was no evidence supporting elimination of (1) Mother's rights to certain information, consultations, and visitation; (2) removal of restrictions related to education and residency; and (3) removal of notice and hearing requirements, possession terms, and rights to communicate with Daughter.

–21–

However, even if we considered the record, the probate court repeatedly approved Father's yearly guardianship reports. Beginning in February 2012, the approval order stated, "guardianship should be continued without modification . . . Annual Report of the Guardian of the Person is approved and the Clerk is authorized to issue new Letters of Guardianship." The probate court approved the annual reports in July 2012, October 2013 and August 2014. Section 1163.104 provides, "Unless the judge is satisfied that the facts stated in the report are true, the judge shall issue orders necessary for the ward's best interest." *Id*. § 1163.104(b) (West 2014). Through these annual reviews, the court concluded Father was fulfilling his duties and responsibilities as Daughter's guardian and that it was in her best interest for him to continue acting as such.

Next, Mother argues the May 19, 2015 order removed safety features designed to protect Daughter such as listing Mother as an emergency contact, permitting Mother to consult with physicians and teachers, and requiring Father to provide notice before changing residence or before seeking non-emergency medical procedures. Mother has not cited to any evidence in the record supporting her claim. Moreover, the probate court repeatedly concluded Father was and continues to act in Daughter's best interest by approving his continuation of guardianship year after year. Therefore, we cannot conclude the probate court abused its discretion by vacating alleged "safety features" that Mother neither showed were necessary to Daughter's safety nor were required by the estates code for a guardian of the person.

Finally, Mother argues the probate court abused its discretion by excluding Dr. Osuji's testimony and striking her offer of proof. Section 1202.152 requires the court to consider a certificate from a licensed physician before modifying a guardianship. However, chapter 1202 does not apply to this proceeding. Accordingly, the probate court did not abuse its discretion by excluding the evidence. Further, despite Mother's claim she had a right to present an offer of

proof to create an appellate record, an offer of proof was unnecessary under these facts because of the statute's inapplicability. Thus, even assuming the probate court erred, any potential error is harmless. *See Fletcher v. Minn. Mining & Mfg. Co.*, 57 S.W.3d 602, 607 (Tex. App.— Houston [1st Dist.] 2001, pet. denied) ("Refusal to permit an offer of proof is reversible error on a showing of harm.").

Having considered all of Mother's arguments, we conclude the probate court did not abuse its discretion by vacating certain provisions and modifying the Agreed Order as requested by Father. We overrule Mother's second issue.

**Did Father Establish is Right to Partial Summary Judgment as a Matter of Law?**

In her fifth issue, Mother argues the probate court erred by granting Father's partial motion for summary judgment thereby denying her motion to remove Father as guardian and denying her second amended application for modification of guardianship, which also requested removal of Father as guardian. Father responds he conclusively proved he did not commit any violation of the estates code warranting his removal as guardian.

"It has been long established that a guardian appointed under Texas guardianship statutes may be 'removed only for some cause declared by the statute to be a sufficient cause.'" *In re Finley*, 220 S.W.3d 608, 612 (Tex. App.—Texarkana 2007, no pet.) (quoting *Kahn v. Israelson*, 62 Tex. 221, 225 (1884)). Generally, the party seeking a guardian's removal has the burden to prove sufficient grounds. *Id.*; *see also State v. Ellison*, 914 S.W.2d 679, 683 (Tex. App.—Austin 1996, no writ). A party defending his removal as guardian may prevail on summary judgment if he can establish as a matter of law that he, as guardian, has not violated any statutory provisions under the estates code. *See Finley*, 220 S.W.3d at 613; *see also Youngs v. Choice*, 868 S.W.2d 850, 852 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

–23–

Although Father moved for partial summary judgment under both traditional and no-evidence grounds, the trial court specifically granted his motion on traditional grounds. The standard of review for a traditional summary judgment is well-established. We review a summary judgment do novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). A party moving for traditional summary judgment has the burden to prove there is no genuine issue of material fact and he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If the movant's summary judgment establishes his right to judgment as a matter of law, then the burden shifts to the nonmovant to raise an issue of fact on one of the elements of the movant's claim. *Lunsford Consulting Grp., Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If the nonmovant's evidence raises a fact issue, summary judgment is not appropriate. *Ayeni v. State*, 440 S.W.3d 707, 709 (Tex. App.—Austin 2013, no pet.).

Mother sought removal of Father as guardian under former probate section 761(c) (now TEXAS ESTATES CODE ANN. § 1203.052(a)) for the following reasons:

> (1) abdicating his duty to care for Daughter by allowing Mother periods of visitation in excess of the court-ordered visitation schedule;
>
> (2) causing severe stress and agitation to Daughter by threatening to send her to jail;
>
> (3) violating terms of the court order by not giving Mother notice of changing Daughter's residence and giving her the opportunity to request a hearing;
>
> (4) failing to provide Mother with information regarding Daughter's welfare;
>
> (5) failing to make an account or report required by law;

(6) failing to obey a proper court order with respect to the performance of guardian's duties;

(7) neglecting or treating Daughter cruelly;

(8) neglecting to educate or maintain Daughter as liberally as the means of the estate and the Daughter's ability permits; and

(9) knowingly providing false information to the court resulting in gross mismanagement or misconduct in his performance as guardian.

Father challenged each ground for removal in his traditional motion for partial summary judgment and argued he was entitled to judgment as a matter of law because none of the alleged grounds for removal rose to the level mandated by section 761 or were not a statutorily-mandated basis for removal.

On appeal, Mother argues fact issues preclude summary judgment only as to whether Father (1) violated terms of the Agreed Order by not giving Mother notice of changing Daughter's residence and giving Mother the opportunity to request a hearing; (2) neglected or treated Daughter cruelly; and (3) interfered with Daughter's progress or participation in programs in the community and/or neglected to educate or maintain Daughter as liberally as her condition permits. We consider each argument in turn.

In support of her argument Father violated the Agreed Order by failing to provide her with thirty days written notice if he changed Daughter's residence, she directs this Court to a letter written by Father on February 23, 2012. The relevant portion of the letter states:

> Currently, we've set up an interim program that will allow [Daughter] the independence and responsibilities of living away from home. We've secured a condominium in a quiet gated community in Preston Hollow for her to live in and have structured a program with the goal to help [Daughter] to continue to develop the necessary skills to be successful in a group living community, once we find one that fits her needs. We will provide the staffing necessary to support [Daughter's] needs and to continue her structured independence program.

[Daughter's] place is located at [address]. As with St.
Nicholas, your visitation time will not be interrupted at this time.

Mother claims that because the letter indicates Father "secured a condominium" and provided a specific address, this "showed the move had already occurred and [Daughter] was already living in the apartment." Mother's argument is nothing more than speculation. The letter does not say Daughter had moved into the residence, and other than Mother's unsubstantiated allegation in her affidavit, she has provided no other evidence supporting her statement. The February 23, 2012 letter notified Mother of Father's intent to change Daughter's residence. Because Mother failed to create a fact issue that Father violated the terms of the Agreed Order, Father could not be removed as guardian for failing to obey a court order. *See* TEX. ESTATES CODE ANN. § 1203.052(a)(3) (West 2014) (formerly TEX. PROB. CODE ANN. § 761(c)(3)).

However, even if a fact issue existed as to whether Father violated the notice provision of the Agreed Order and the violation rose to the level to warrant his removal as guardian, remand under the facts of this case would not serve any purpose but to needlessly prolong the litigation given our determination that the probate court did not err by granting Father's motion to modify the Agreed Order, which specifically vacated the notice provision.

Mother next argues fact issues exist as to whether Father neglected or cruelly treated Daughter. In her removal motion and in her affidavit in response to Father's motion for partial summary judgment, she claimed "[Father] has acted in an unnecessarily harsh, cruel or abusive manner toward [Daughter], including an occasion where I personally observed [Father] tell [Daughter] that he would send her to jail. [Father's] behavior was cruel and inappropriate and upset [Daughter] severely."

A guardian may be removed if he engages in conduct "that would be considered to be abuse, neglect, or exploitation as those terms are defined by Section 48.002, Human Resources

Code." *See* TEX. ESTATES CODE ANN. § 1203.052(a)(6) (West 2014) (formerly TEX. PROB. CODE ANN. § 761(c)(6)). Mother focuses on "abuse" and "neglect," which are defined as follows:

> (2) "Abuse" means:
>
> (A) the negligent or willful infliction of injury, unreasonable confinement, intimidation, or cruel punishment with resulting physical or emotional harm or pain to . . . a person with a disability by the person's caretaker, family member, or other individual who has an ongoing relationship with the person; . . . .
>
> (4) "Neglect" means the failure to provide for one's self the goods or services, including medical services, which are necessary to avoid physical or emotional harm or pain or the failure of a caretaker to provide such goods or services.

TEX. HUM. RES. CODE ANN. § 48.002(a)(2)(A), (a)(4) (West Supp. 2016). Father denies that he ever told Daughter he would send her to jail. Regardless, this statement alone does not amount to neglect as defined by the human resources code because it does not relate to failing to provide any necessary goods or services. Neither does the statement equate to "abuse" as a matter of law. While we agree with Mother the statement could reasonably be viewed as "hostile and angry" when made toward someone with a mental disability, this one statement alone did not result in "injury, unreasonable confinement, intimidation, or cruel punishment with resulting physical or emotional harm or pain," thereby providing grounds to remove Father as guardian.

Finally, Mother argues fact issues exist as to whether Father interfered with Daughter's progress or participation in programs in the community and/or neglected to educate or maintain Daughter as liberally as her condition permits. We first note Mother did not allege in her motion to remove guardian, supplemental motion to remove guardianship, or her second amended application for modification of guardianship (the live pleadings at the time Father moved for partial summary judgment) that Father should be removed because he interfered with Daughter's progress or participation in programs in the community. In order to be successful, Father, as movant, was only required to defeat Mother's case as pleaded. *Kashif Bros., Inc. v. Diamond*

–27–

*Shamrock Refining & Marketing Co.*, No. 14-01-00202-CV, 2002 WL 1954852, at *5 (Tex. App.—Houston [14th Dist.] Aug. 22, 2002, pet. denied). Because Mother's live pleadings did not provide notice of this ground for removal, she could not defeat summary judgment by alleging it in her response unless the issue was tried by consent. *Id.*; *see Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). Claims tried by consent are treated as if they had been raised by the pleadings. TEX. R. CIV. P. 67. When new claims are asserted in a non-movant's summary judgment response, as Mother did here, Father had two options: (1) object that the claims had not been pleaded; or (2) respond on the merits and try the issue by consent. *Via Net*, 211 S.W.3d at 313. Although Father argues on appeal that Mother failed to raise this argument to the probate court and therefore she cannot raise it on appeal, Father ignores the fact he addressed, rather than objected to, Mother's argument in his reply to Mother's response for partial summary judgment. Thus, this ground for removal was tried by consent, placed squarely before the probate court, and is now properly before this Court for review. *Id.*; *see also* TEX. R. CIV. P. 166a(c).

In support of her claim, Mother states in her affidavit that Father "has interfered with the [Daughter's] progress or participation in programs in the community by preventing [Daughter] from attending events with me and her sisters, and/or by preventing or limiting [her] from participating in activities and programs while she is with him such as horseback riding, swimming, and special Olympics." Father objected in his reply that the statement was conclusory.

A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.) (affidavit conclusory when it did not provide underlying facts to support conclusion dog was "aggressive"). Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a motion. *Holloway v. Dekkers*, 380 S.W.3d 315, 323 (Tex.

App.—Dallas 2012, no pet.). We agree with Father the statement in Mother's affidavit is conclusory. Mother provided no underlying facts or evidence to support specific instances in which Father prevented or interfered with Daughter's participation or attendance in activities or events. Moreover, she has not provided any factual support that any interference warranted Father's removal as guardian. Mother failed to present any evidence creating a fact issue and her argument for removal under section 1203.052(a)(8) fails as a matter of law.

To support grounds for removal under section 1203.052(7) (former probate code section 761(c)(6-a)), which allows removal if a guardian "neglects to educate or maintain the ward as liberally as the means of the ward's estate and the ward's ability or condition permit," Mother stated the following in her response affidavit:

> [Father] is not maintaining [Daughter] as liberally as her ability and condition permit. [Father] moved [her] out of her family home and into an apartment, which is not in her best interest, and not appropriate for her ability level. [Father] wants to move [her] into an in-patient facility when [she] would be far better off given her abilities and condition, living with her family full time.

Again, we agree with Father these statements are conclusory and therefore do not create a fact issue to defeat summary judgment. Father stated in his affidavit attached to his motion that he had "maintained the Ward's education at the well-respected Notre Dame School and in her home setting, have maintained Ward at the highest care." Mother does not dispute Daughter attended Notre Dame or challenge the school's ability to educate Daughter as liberally as her ability and condition permit. Rather, Mother's argument is merely a difference in opinion about where Daughter should live, which she failed to support with any underlying facts or evidence about why living in an apartment was not in Daughter's best interest and living with her would be in Daughter's best interest. Further, we cannot conclude the possibility of some future move of Daughter to an in-patient facility creates a fact issue as to whether Father should be removed as

–29–

guardian for failing to maintain Daughter as liberally as her ability permits. Therefore, Mother's argument for removal under section 1203.052(a)(7) fails.[8]

The probate court did not err by granting Father's partial motion for summary judgment regarding Mother's attempts to remove him as guardian. We overrule Mother's fifth issue in part. Mother's remaining arguments regarding whether the probate court denied her right to an evidentiary hearing are discusses separately below.

### Did the Probate Court Err by Denying Mother's Request for an Evidentiary Hearing on her Motions in Opposition of Placement?

Mother's fifth issue also argues the probate court abused its discretion by denying her repeated requests for an evidentiary hearing and neglecting its independent obligation to determine if a change in residence was in Daughter's best interest. Father responds Mother effectively waived any right she had to a hearing because of her own inaction in setting the motions.

Mother filed several applications for modification of guardianship and motions in opposition to Daughter's placement outside Father's home and requested evidentiary hearings pursuant to the terms of the Agreed Order. Her motions were: (1) November 28, 2011 motion in opposition to placement; (2) first amended motion in opposition filed December 8, 2011; and (3) second amended motion in opposition filed March 4, 2013. Father filed a motion to dismiss arguing Mother failed to comply with the terms of the Agreed Order, which required Mother to file a motion in opposition within thirty days of receiving notice from him. The probate court

---

[8] At the time the parties filed and argued the partial summary judgment motion and response, the probate court had already appointed Hunter as guardian ad litem. Although not included or referenced by either party in its motion, response, or reply, Hunter filed "report of guardian ad litem" on August 20, 2012. In the report, she opined that Daughter "currently has a safe living arrangement in the apartment in the gated community where she lives and that the home of the mother also provides a safe living arrangement for the ward during the periods of time that the ward lives with the mother." We acknowledge this evidence was not before the trial court as part of the summary judgment record and therefore could not be considered. *See* TEX. R. CIV. P. 166a(c). However, given the contentious nature of this ongoing litigation, we simply reference it to further support why removal was unnecessary.

granted Father's motion to dismiss on September 22, 2014, and specifically denied Mother's three motions.

Neither party has provided any case law showing whether it was Mother's burden to set an evidentiary hearing or the probate court's duty to set a hearing once Mother requested a hearing on her motions. This is likely due to the fact Mother's asserted right to an evidentiary hearing originates from the Agreed Order and is not based on the type of motion or hearing referenced in the rules of civil procedure or the estates code. Generally, "the movant has the burden to set a hearing on the motion or make a direct request to a trial judge for a hearing." *Enriquez v. Livingston*, 400 S.W.3d 610, 619–20 (Tex. App.—Austin 2013, pet. denied). This is because "motions are usually handled by the court clerk and are placed—physically or electronically—in the case file, meaning that a busy trial judge will, in all likelihood, not even be aware that the motion has been filed." *Id.*

Here, the record is clear the probate court was aware of the numerous motions and requests for an evidentiary hearing; however, the issue is Mother's failure to *set* a hearing on her motions. For example, during a July 24, 2013 hearing, the probate court stated the following:

> If [Mother's Counsel] wants to set an evidentiary hearing, we will set an evidentiary hearing.

> I'm not making any promises that I'll make any ruling out of the evidentiary hearing, but since the order says "evidentiary hearing," you're free to set one.

> But it's not a substitute for trial on the ultimate issue.

During another hearing in April 2014, the probate court again acknowledged Mother's prior counsel had the opportunity three years earlier to set an evidentiary hearing but failed to do so. The court stated its willingness to have an evidentiary hearing years earlier because "all he needed to do was set an evidentiary hearing because it's just that it wasn't clear to me what was supposed to happen at that evidentiary hearing, based on the Order." While the court

–31–

sympathized with the plight of Mother's current counsel, the court reminded him "the person that you inherited this case from, you know, kind of set the tone for you, in terms of where you happen to be now with this Court."[9] Based on this record, we cannot conclude the probate court abused its discretion when it repeatedly informed Mother of its willingness to conduct a hearing but she needed to set one. The record is devoid of any attempts by Mother to actually set a hearing. *See, e.g., Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (trial court abused its discretion by refusing to conduct a hearing on a pending motion). Rather, both sides continued to file motions and hold hearings on other issues for years.

Further, we cannot conclude the probate court abused its discretion by failing to hold an evidentiary hearing on Mother's opposition to placement of Daughter outside their homes when the parties ultimately participated in a two-day trial on Father's motion to modify the Agreed Order in which Mother had the opportunity to testify and present evidence of her disapproval of Daughter living anywhere other than with her. As the probate court stated during one of the hearings, any evidentiary hearing would not be "a substitute for trial on the ultimate issue," which eventually occurred in January 2015.

Finally, even if we concluded the probate court abused its discretion by denying Mother an evidentiary hearing on her motion in opposition of Daughter's placement, remand under the facts of this case would not serve any purpose given our determination that the probate court did not abuse its discretion by granting Father's motion to modify the Agreed Order, which specifically vacated the notice provision. A remand would only give Mother the opportunity to argue about where Daughter should reside, which she is not entitled to because such decisions rest solely with Father.

---

[9] The trial court likewise recognized that although Mother's current counsel complained Mother could not set an evidentiary hearing because Father had refused certain discovery, Mother failed to explain why previous counsel never complained about Father's alleged failure to provide requested discovery and how that hindered her ability to set a hearing. Rather, the trial court expressed that a review of the case file prior to current counsel being retained showed no discovery disputes between the parties.

To the extent Mother argues the probate court abused its discretion because it neglected its independent obligation to determine if a change in residence was in Daughter's best interest, her argument is without merit. Section 1163.101(c)(4), (6), which Mother relies on to support her position, requires the guardian to file an annual report containing specific information. Mother does not cite any specific subsection of section 1163.101(c)(4) that Father failed to comply with. Rather, she argues Father failed to "clearly indicate" whether Daughter was satisfied with her living arrangements as required under section 1163.101(c). *See* TEX. ESTATES CODE ANN. § 1163.101(c) (West Supp. 2016).

In the annual guardianship report filed July 25, 2012, Father answered "Yes" to "Is the Ward content or unhappy with the living arrangements?" He indicated Daughter's present living arrangements were "Excellent," there were "No" unmet needs, and Daughter's physical and mental health had "Remained Unchanged," since changing residences in the past year. Given this information in the guardianship report, we cannot conclude the probate court neglected its independent obligation to consider the Daughter's best interest before it approved the annual guardian report and determined the guardianship should be continued without modification. Accordingly, we overrule the remaining part of Mother's fifth issue.

**Did the Probate Court Enter Erroneous Findings of Fact and Conclusions of Law?**

In her sixth issue, Mother argues the evidence is legally and factually insufficient to support findings of fact 14, 16, 19, and 21-28 and conclusions 5-8 fail as a matter of law.

In an appeal from a bench trial, an appellate court reviews a trial court's conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory. *Slicker v. Slicker*, 464 S.W.3d 850, 857 (Tex. App.—Dallas 2015, no pet.). When the appellate record contains a complete reporter's record, we review the probate court's findings of fact under the same standards for legal and factual sufficiency that govern the review of jury findings. *Id.* In

evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* In a factual sufficiency review, we examine all the evidence in the record, both supporting and contrary to the trial court's finding, and reverse only if the finding is so against the great weight of the evidence as to be clearly wrong and unjust. *Slicker*, 464 S.W.3d at 858. In evaluating the probate court's findings of fact, we must give substantial deference to the probate court's determination of the weight and credibility of the evidence. *Id.* In a bench trial, the probate court acts as the factfinder and is the sole judge of witness credibility. *Id.*

Mother groups the objectionable findings into three categories: (1) Father's qualifications to be guardian (findings 14, 16, 19); (2) illegality of the provisions of the Agreed Order related to possession, access, residence, education, and domicile of Daughter (findings 21-24); and (3) the unworkability of the Agreed Order (findings 25-28).

She groups the objectionable conclusions into three categories: (1) the "unworkability" of the Agreed Order (conclusions 5 and 6); (2) illegality of the provisions of the Agreed Order related to possession, access, residence, education, and domicile (conclusions 7-13); and (3) determination of the applicable estates code provisions (conclusions 14-18). We address each category in turn.

As for Father's qualifications, the probate court properly granted a partial motion for summary judgment in which it determined there was no basis to remove Father as guardian; therefore, Father was qualified to be Daughter's guardian. Additionally, the probate court repeatedly reviewed the guardianship annually and determined it should be continued. Thus, the evidence supports these findings.

As for Mother's challenges regarding the court's modification of the Agreed Order, our determination that the probate court properly modified the Agreed Order to comply with the estates code dispenses with her sufficiency challenges. Thus, the probate court correctly found and concluded the Agreed Order improperly granted rights to a non-guardian (finding 21 and conclusions 9-12), improperly granted rights of a non-guardian superior to the guardian (finding 22 and conclusion 7), and improperly restricted and negatively affected Father's ability to pursue opportunities to promote self-reliance and independence for Daughter (findings 23 and 24 and conclusion 8). And as discussed previously, the court properly concluded chapter 1202 and section 1103.002 do not apply (conclusions 13-18).

Mother argues the only evidence to support the probate court's finding of the "unworkability" of the Agreed Order was Father's own conclusory statements; therefore, he presented insufficient evidence to establish the Agreed Order negatively impacted his ability to protect or promote Daughter's well-being and interests.

We agree bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). However, the probate court heard more than Father's alleged conclusory statements during the January 2015 hearing. Father explained Mother's "sabotage" letter to Cornerstone in which she described Daughter's alleged violent behavior and her belief Daughter should not live there. Father testified Mother's actions interfered with his ability to pursue a group home for Daughter because, "As it stands now, it's uncertain whether or not she has an opportunity to go to Cornerstone, number one, because of the delay of this lawsuit, and number two, because of that letter and [Mother's] behavior towards them."[10] He explained, as guardian, he filed the

_____

[10] In his motion to modify, Father described Cornerstone as "the best and only available option for the Ward now to live amongst her peers and lead the most interactive and productive life. If admitted, Cornerstone is prepared to fully promote the Ward's self-reliance and relative independence for the rest of her life . . . Guardian believes that establishing the Ward's residence at Cornerstone is in her best interest."

temporary injunction against Mother seeking affirmative relief to protect Daughter's opportunity at Cornerstone, which he believed would be harmed if Mother was not prevented from further communications with them.

He testified about an incident when Daughter returned to his home with a black eye and Mother refused to provide him an explanation. Another time, Mother left town and did not pick Daughter up from school because of her mistaken reading of the visitation schedule. Mother refused to allow Father to pick Daughter up and instead sent the nanny. Because of the terms of the Agreed Order, Father explained he had to send Daughter with someone he did not know because he was "in a situation where I have no rights to take charge because there's a superior visitation order in place." He explained another situation in which the visitation order complicated Daughter's ability to attend a camp she had enjoyed for years.

He explained the difficulty in finding an appropriate group home for Daughter with the residency restriction in place and the limited opportunities available. Hunter testified she did not have any concern about Father investigating potential homes for Daughter and her subsequent placement; however, at the time of the hearing, Hunter did not have any group homes to consider to provide a specific opinion. She also had no objection to the court removing the geographic restriction because of the limited opportunities available for Daughter in Dallas County. She described Father's investigation into potential homes for Daughter as "very meticulous." Mother admitted she had not visited any group homes for special needs adults because, "There's no need to. None."

After reviewing the record from the January 2015 hearing, we conclude the evidence is legally sufficient to support findings 25-28 and conclusions 5-6 that the Agreed Order was "unworkable." *See City of Keller*, 168 S.W.3d at 827. Although Mother provided contradictory testimony, such as explaining why she sent the email to Cornerstone and accusing Father of lying

–36–

about not knowing the nanny, the probate court's findings are not so against the great weight of the evidence as to be clearly wrong and unjust. *Slicker*, 464 S.W.3d at 858.

In reaching this conclusion, we reject Mother's argument that it is "unclear" how any of the vacated provisions could harm Daughter "when they represent commonly-accepted possession terms." Again, this is not a family court order determining conservatorship. Instead, the probate court had the obligation to modify the Agreed Order to comply with the estates code. Despite Mother's repeated argument that none of the provisions harmed Daughter, she dismisses the fact the provisions gave superior rights to a non-guardian and interfered with Father's ability to conduct his duties as guardian of the person, as evidenced by Father's testimony. Mother's sixth issue is overruled.

### Did the Probate Court Abuse its Discretion by Awarding Sanctions?

In her fourth issue, Mother argues the probate court abused its discretion by sanctioning her for filing frivolous, meritless pleadings that were intended to harass Father.

The record shows Mother filed the following relevant documents pertaining to the sanctions order: (1) first amended application for modification of guardianship filed November 23, 2011; (2) motion to remove guardian/review guardianship filed March 23, 2012; (3) supplemental motion to remove guardianship/review guardianship filed March 1, 2013; and (4) second amended application for modification of guardianship filed March 4, 2013. Father's traditional and no-evidence motion for partial summary judgment challenged these four pending motions. On July 24, 2013, Mother filed a motion for leave to file a late response, which the probate court granted. Father filed a reply in which he made an allegation for the first time of bad faith and stated, without any supporting evidence, that Mother's response "appears to be nothing more than groundless, frivolous and bad faith harassment for the purposes of delay." He did not, however, request sanctions against Mother at that time.

The probate court granted Father's partial motion for summary judgment on March 10, 2014, and specifically denied Mother's four pending motions regarding modification and removal of Father as guardian. On March 28, 2014, Mother filed a motion to sever the partial summary judgment order so she could file an appeal, but the court denied her motion on May 20, 2014.

Father filed a motion for sanctions pursuant to Texas Rules of Civil Procedure 13 and 215 and Texas Civil Practices and Remedies Code section 10.004, as part of a "consolidated motion for affirmative relief" on August 22, 2014. He supplemented his motion and requested sanctions under section 1155.151(c) of the estates code on July 6, 2015. *See* TEX. ESTATES CODE ANN. § 1155.151 (West Supp. 2016) (court may order a party to pay all or part of the costs of the proceeding if it "finds that a party in a guardianship proceeding acted in bad faith or without just cause in prosecuting or objecting to an application in the proceeding").

After reviewing Father's motions, Mother's pleadings, and conducting a hearing, the probate court concluded Mother acted in bad faith and without just cause by filing and prosecuting her (1) motion for leave to file response to Father's traditional and no evidence motion for summary judgment filed on July 24, 2013; (2) second amended application for modification of guardianship; (3) first amended application for modification of guardianship; (4) motion to remove guardian/review guardianship; and (5) supplemental motion to remove guardianship/review guardianship. The probate court awarded sanctions pursuant to section 1155.151 of the estates code and ordered Mother to pay $3,342.50, which equaled half of the outstanding attorney ad litem fees.

Mother provides several arguments in support of reversing the sanctions order. Father, on the other hand, does not respond to Mother's legal arguments and instead argues the probate court acted within its discretion because the court considered the "lengthy delay" that Mother's

numerous filings caused and the "tremendous emotional and financial cost" to him. He also emphasizes Mother "did not win a single motion" after four years of litigation.

We review the imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). An appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838–39.

To determine if the sanctions were appropriate and just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991)). Generally, courts presume that pleadings and other papers are filed in good faith. *Low*, 221 S.W.3d at 614. The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Id*. When a sanction order refers to one specific rule, as in this case, we are confined to determining whether the sanction is appropriate under that particular rule. *See Ramirez v. Encore Wire Corp*., 196 S.W.3d 469, 476 (Tex. App.—Dallas 2006, no pet.).

We first address whether the probate court abused its discretion by applying section 1155.151(c) retroactively. Mother argues section 1155.151(c) was not in effect when she filed the challenged pleadings; therefore, the probate court violated the constitutional prohibition against retroactive laws by imposing sanctions under that section. *See* TEX. CONST. art. 1, § 16 ("No . . . retroactive law . . . shall be made."). The record does not indicate Mother raised this argument to the probate court; therefore, it is waived. *See* TEX. R. APP. P. 33.1; *Isaacs v. Isaacs*, 338 S.W.3d 184, 189–90 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (appellant waived retroactive application of statute by failing to present argument to trial court). We now consider

whether Father met his burden to overcome the presumption that Mother filed her pleadings in good faith.

The probate court determined Mother "acted in bad faith and without just cause" when she filed five sworn pleadings. No courts have discussed the imposition of sanctions under section 1155.151(c), but we consider the "bad faith" language discussed in cases interpreting Texas Rule of Civil Procedure 13 instructive. *See* TEX. R. CIV. P. 13 (signature of attorneys and parties constitute that pleadings are not groundless and brought in bad faith). Bad faith is not simply bad judgment or negligence, but is the "conscious doing of a wrong for dishonest, discriminatory, or malicious purpose." *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex. App.—Dallas 2003, no pet.). Improper motive is an essential element of bad faith. *Id*. However, direct evidence of a sanctioned person's subjective intent is not required and may be shown by circumstantial evidence. *Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 289–90 (Tex. App.—Dallas 2012, no pet.).

We agree with Mother that nothing within the record indicates she consciously filed pleadings for dishonest, discriminatory, or malicious purposes. The probate court's denial of Mother's motions is not proof of bad faith. *See GTE Commc'n Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) ("Rule 13 does not permit sanctions for every pleading or motion that requests relief which is denied."). Because we presume pleadings are filed in good faith, Mother's pleadings alone cannot establish bad faith. *Gomer v. Davis*, 419 S.W.3d 470, 479 (Tex. App.—Houston [1st Dist.] 2013, no pet.). At the evidentiary hearing, Father presented only Mother's pleadings as evidence and his own opinions Mother acted in bad faith. However, motions and arguments of counsel are not evidence. *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ). Further, Father's speculation and surmise as to Mother's alleged intent "will not suffice for the proof required." *Loya v. Loya*, No. 14-12-

–40–

00385-CV, 2013 WL 830940, at *3 (Tex. App.—Houston [14th Dist.] Mar. 5, 2013, no pet.) (mem. op.) (attorney's characterizations of motion as "non-meritorious on its face," "a frivolous motion, and "another installment of silliness" were mere conclusions and therefore not evidence of bad faith). Moreover, "tremendous emotional distress and financial costs" is not the standard for awarding sanctions, particularly when most litigation involving family and probate issues will be emotional and costly; therefore, Father's arguments are unpersuasive.

Also, the probate court granted Mother's motion for leave to file a late response to Father's partial summary judgment motion, but then sanctioned her two years later for filing that motion in bad faith. A trial court must examine the facts and circumstances in existence at the time the pleading was filed to determine whether sanctions are appropriate. *See Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex. App.—Dallas 1994, writ denied). If the probate court believed the motion was frivolous at the time Mother filed it, then it should have denied leave to file the response.

We conclude the record contains no evidence rebutting the strong presumption Mother filed her motions in good faith. Without such evidence, the probate court's sanction order was an abuse of discretion. We sustain Mother's fourth issue. We reverse and vacate the probate court's August 21, 2015 order requiring Mother to pay $3,342.50 of outstanding attorney ad litem fees.

**Is the November 4, 2015 Child Support Order Void and Legally Erroneous?**

In her final issue, Mother argues the probate court erroneously signed a sua sponte order on November 4, 2015, which was outside the probate court's plenary jurisdiction. Father responds probate proceedings are an exception to the "one final judgment rule"; therefore the probate court's jurisdiction continued over Daughter and the order is not void.

–41–

The probate court entered the final order in this case on May 19, 2015. As part of that order, the probate court vacated paragraph 25 of the Agreed Order which stated, "It is ORDERED that this Court defers to the 330th District Court all matters in any way related to the modification and enforcement of child support issues in the August 5, 2005 Corrected Final Order in Suit to Modify Parent-Child Relationship in Cause No. 92-15372-Y."

Mother filed a motion for suspension of the probate court's appealed orders on August 24, 2015, and the probate court held a hearing on October 15, 2015. During the hearing, Mother asked the probate court to suspend its orders and keep the Agreed Order in place until resolution of this appeal. Mother also expressed her willingness to post a cash deposit in the amount of the monthly child support payments the Agreed Order would have imposed on her. Father later stated the family court was the court of continuing jurisdiction for child support and Mother had not paid any support since March 2015, but he had not had time to address the issue. Neither party specifically asked the probate court to do anything regarding Mother's child support obligation, and the court made no inquiry into the issue.

On October 19, 2015, the probate court sent the parties an email stating that based upon its review of the 2005 SAPCR order, no order of the probate court affected the continuing jurisdiction of the 330th Judicial District Court over the payment of child support obligations. It requested Father to prepare an order. The November 4, 2015 order stated:

> IT IS ORDERED, ADJUDGED and DECREED that this Court has no jurisdiction over the payment of any child support obligation regarding the Ward ordered by the 330th Judicial District Court of Dallas County.
>
> IT IS FURTHER ORDERED, ADJUDGED and DECREED that no order of this Court, including the Court's May 19, 2015 Order, affects in any way the continuing jurisdiction of the 330th Judicial District Court of Dallas County over payment of any child support obligation regarding the Ward or the prior rulings from the 330th Judicial District Court regarding the payment of any child support obligation, including the rulings set forth in the Corrected Final

–42–

> Order in the Suit to Modify Parent-Child Relationship dated August 15, 2005.
>
> IT IS FURTHER ORDERED, ADJUDGED and DECREED that only the 330th Judicial District Court, or an appellate court, has jurisdiction to modify the child support and tuition obligations of [Mother].

Although both parties raise arguments challenging the probate court's jurisdiction to issue the order, our resolution of the issue does not require a jurisdictional analysis. Regardless of whether the probate court had continuing jurisdiction or acted outside of its plenary power, it had the authority to clarify its order. *See Hawk v. E.K. Arledge, Inc.*, No. 05-01-01144-CV, 2002 WL 1225917, at *5 (Tex. App.—Dallas June 6, 2002, pet. denied) (noting trial court has the inherent power to correct its judgment to accurately reflect the judgment as rendered and may do so on its own motion). By stating it had no jurisdiction over the payment of child support obligations, the probate court simply clarified the essence of the May 19, 2015 order, which also deferred all matters related to modification and enforcement of child support issues to the 330th Judicial District Court. Both orders, therefore, recognize the probate court's lack of jurisdiction over child support issues in this case. *See, e.g.*, *In re Winn*, 372 S.W.3d 291, 301 (Tex. App.—Dallas 2012, no pet.) (trial court's clarification of order did not change any terms as "judgment of the probate court remained the same"). Accordingly, the probate court's actions did not result in the elimination or modification of Mother's child support obligations in the 330th Judicial District Court. Rather, the order clarified and acknowledged the fact it had no jurisdiction over child support in this case. Under the facts of this case, we cannot say the probate court abused its discretion. We overrule Mother's final issue.

**Conclusion**

Having considered Mother's issues, we reverse and vacate the probate court's August 21, 2015 order requiring Mother to pay $3,342.50 of outstanding attorney ad litem fees.  In all other respects, the judgment of the trial court is affirmed.

.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

151006F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN RE: THE GUARDIANSHIP OF
SYDNEY AYN LAROE, AN
INCAPACITATED PERSON

No. 05-15-01006-CV

On Appeal from the Probate Court No. 1,
Dallas County, Texas
Trial Court Cause No. PR-09-3185-1.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Stoddart
participating.

The probate court's August 21, 2015 order requiring Rae Ann Merkle to pay $3,342.50 of outstanding attorney ad litem fees is **REVERSED** and **VACATED**. In all other respects, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear their own costs of this appeal.

Judgment entered this 8th day of February, 2017.